MAX WULFSOHN et al., Respondents, *v.* RUSSIAN SOCIALIST FEDERATED SOVIET REPUBLIC, Appellant.

**Jurisdiction — courts — may not review actions of foreign government — warrant of attachment should be vacated where it clearly appears plaintiff must ultimately fail — attachment issued in action against foreign government in regard to property without our jurisdiction vacated.**

1. Where the complaint and the affidavits upon which a warrant of attachment is based clearly indicate that the plaintiffs must ultimately fail the warrant should be vacated. Hence a motion to vacate a warrant of attachment issued in an action against a foreign government brought in our courts to litigate title to property situate without our jurisdiction should be granted.

2. Whether or not a government exists clothed with the power to enforce its authority within its own territory, obeyed by the people over whom it rules, capable of performing the duties and fulfilling the obligations of an independent power, able to enforce its claims by military force, is a fact, not a theory, and, where the fact is conceded, our courts are not competent to review its actions. They may not bring a foreign sovereign before our bar, not because of comity, but because he has not submitted himself to our laws. Without his consent he is not subject to them. Such is not the proper method of redress if a citizen of the United States is wronged. The question is a political one, not confided to the courts but to another department of govern-

ment. Whenever an act done by a sovereign in his sovereign character is questioned it becomes a matter of negotiation, or of reprisals or of war.

*Wulfsohn* v. *Russian Republic*, 202 App. Div. 421, reversed.

(Argued November 22, 1922; decided January 9, 1923.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered July 21, 1922, which affirmed an order of Special Term denying a motion to vacate a warrant of attachment.

The following question was certified: " Can the defendant, which has not been recognized as a sovereign state by the United States government, be sued in the courts of this state as a foreign corporation? "

*Osmond K. Fraenkel* and *Charles Recht* for appellant. Defendant as a *de facto* state is immune from suit. (*Exchange* v. *McFaddon*, 7 Cranch, 117; *Osborne* v. *Bank of U. S.*, 9 Wheat. 870; *Beers* v. *State of Arkansas*, 20 How. [U. S.] 527; *Porto Rico* v. *Rosaly*, 227 U. S. 270; *Kawananakowa* v. *Polyblank*, 205 U. S. 349; *King of Roumania* v. *Guaranty Trust Company*, 250 Fed. Rep. 341; *Matter of Hoeple*, 179 N. Y. 308; *Manning* v. *State of Nicaragua*, 14 How. Pr. 517; *Leavitt* v. *Dabney*, 37 How. Pr. 264; *Hassard* v. *United States of Mexico*, 29 Misc. Rep. 511; 173 N. Y. 645.) Defendant cannot be sued for acts committed within its own territory. (*Underhill* v. *Hernandez*, 168 U. S. 250.)·

*Otto C. Sommerich*, *Maxwell C. Katz* and *Edwin M. Borchard* for respondents. The court may take judicial notice of the fact that the defendant is a government with which the United States is not on friendly terms and which it has not recognized. (*U. S.* v. *Palmer*, 3 Wheat. 610; *The Divina Pastora*, 4 Wheat; 52; *The Nueva Anna*, 6 Wheat. 193; *Oetjen* v. *Central Leather Co.*, 246 U. S. 297; *Emperor of Austria* v. *Day*, 3 De G., F. & J. 217;

*Republic of Peru* v. *Peruvian Guano Co.*, 36 Ch. Div. 489; *Republic of Peru* v. *Dreyfus*, 38 Ch. Div. 348; *Taylor* v. *Barclay*, 2 Sim. 213; *Rose* v. *Himely*, 4 Cranch, 241; *Jones* v. *United States*, 137 U. S. 202.) The defendant not being a sovereign state with whom the United States is on friendly terms is not immune from suit in the courts of the state of New York. (*Exchange* v. *McFaddon*, 7 Cranch, 117; *The Santissima Trinidad*, 7 Wheat. 283; *Matter of Johnson Lighterage Co.*, 231 Fed. Rep. 365.) The doctrine of immunity from suit should not be extended to unrecognized governments. (*Luzzato & Sons* v. *S. S. Pesaro*, 277 Fed. Rep. 473.) Not being a recognized sovereign government, the confiscatory acts of the defendant in taking away the property of American citizens can be questioned in our courts. (*Oetjen* v. *Central Leather Co.*, 246 U. S. 297; *Ricaud* v. *American Metals Co.*, 246 U. S. 304; *Luther* v. *Sagor*, 37 L. T. Rep. 1921.)

ANDREWS, J. The Russian Federated Soviet Republic is the existing *de facto* government of Russia. This is admitted by the plaintiff. Otherwise there is no proper party defendant before the court. It is claimed by the defendant. The Appellate Division states that it is a matter of common knowledge. It has not been recognized by the government of the United States. The plaintiffs owned a quantity of furs. They were stored in Russia and they were confiscated by the Russian government. Treating this act as a conversion the present action is brought. The litigation is not, therefore, with regard to title to property situated within the jurisdiction of our courts where the result depends upon the effect to be given to the action of some foreign government. Under such circumstances it might be that the theory of the comity of nations would have a place. (*The Annette*, L. R. Pro. Div. [1919] 105; *The Nueva Anna*, 6 Wheat. 193; *Oetjen* v. *Central Leather Co.*, 246 U. S. 297; *Luther* v.

*Sagor & Co.*, 1 K. B. 1921, 456; *S. C.*, 3 K. B. 1921, 532.)
A different case is presented to us. The government itself
is sued for an exercise of sovereignty within its own
territories on the theory that such an act if committed by
an individual here would be a tort under our system of
municipal law. It is said that because of non-recognition
by the United States such an action may be maintained.
There is no relation between the premise and the
conclusion.

The result we reach depends upon more basic considera-
tions than recognition or non-recognition by the United
States. Whether or not a government exists clothed with
the power to enforce its authority within its own territory,
obeyed by the people over whom it rules, capable of
performing the duties and fulfilling the obligations of an
independent power, able to enforce its claims by military
force, is a fact not a theory. For it recognition does not
create the state although it may be desirable. So only
are diplomatic relations permitted. Treaties made with
the government which it succeeds may again come into
effect. It is a testimony of friendly intentions. Also
in the country granting the recognition that act is con-
clusive as to the existence of the government recognized.
(*Taylor* v. *Barclay*, 2 Sim. 213; *Republic of Peru* v. *Drey-
fus Bros. & Co.*, L. R. 38 Ch. Div. 348; *Republic of Peru*
v. *Peruvian Guano Co.*, L. R. 36 Ch. Div. 489.) Again
recognition may become important where the actual
existence of a government created by rebellion or other-
wise becomes a political question affecting our neutrality
laws, the recognition of the decrees of prize courts and
similar questions. But except in such instances the fact
of the existence of such a government whenever it becomes
material may probably be proved in other ways. (*Yris-
arri* v. *Clement*, 3 Bing. 432; *The Charkich*, L. R. 4 A. & E.
59; but see *Mighell* v. *Sultan of Johore*, [1894] 1 Q. B. 158;
*Luther* v. *Sagor*, 1 K. B. 1921, 456, 474.) Here, however,
we need no proof. The fact is conceded. We have an

existing government sovereign within its own territories. There necessarily its jurisdiction is exclusive and absolute. It is susceptible of no limitation not imposed by itself. This is the result of its independence. It may be conceded that its actions should accord with natural justice and equity. If they do not, however, our courts are not competent to review them. They may not bring a foreign sovereign before our bar, not because of comity, but because he has not submitted himself to our laws. Without his consent he is not subject to them. Concededly that is so as to a foreign government that has received recognition. (*The Schooner Exchange* v. *McFaddon,* 7 Cranch, 116; *Porto Rico* v. *Rosaly,* 227 U. S. 270; *Oetjen* v. *Central Leather Co.,* 246 U. S. 297; *Underhill* v. *Hernandez,* 168 U. S. 250; *American Banana Co.* v. *United Fruit Co.,* 213 U. S. 347; *Ricaud* v. *American Metal Co.,* 246 U. S. 304; *Hassard* v. *United States of Mexico,* 29 Misc. Rep. 511; affd., 173 N. Y. 645; *Mason* v. *Intercolonial Railway,* 197 Mass. 349; *Wadsworth* v. *Queen of Spain,* 17 Q. B. 171; *Vavasseur* v. *Krupp,* L. R. 9 Ch. Div. 351; *Strousborg* v. *Costa Rica,* 44 L. T. 199.) But whether recognized or not the evil of such an attempt would be the same. " To cite a foreign potentate into a municipal court for any complaint against him in his public capacity is contrary to the law of nations and an insult which he is entitled to resent." (*De Haber* v. *Queen of Portugal,* 17 Q. B. 171.) In either case to do so would " vex the peace of nations." In either case the hands of the state department would be tied. Unwillingly it would find itself involved in disputes it might think unwise. Such is not the proper method of redress if a citizen of the United States is wronged. The question is a political one, not confided to the courts but to another department of government. Whenever an act done by a sovereign in his sovereign character is questioned it becomes a matter of negotiation, or of reprisals or of war.

If the complaint and the affidavits upon which the warrant of attachment was based in the case before us clearly indicate that the plaintiffs must ultimately fail the warrant should be vacated. It does so appear in this case.

The orders, therefore, appealed from should be reversed, with costs in all courts, and motions to vacate attachment granted, with costs, and the question certified to us should be answered in the negative.

Hiscock, Ch. J., Hogan, Cardozo, Pound and Mc-Laughlin, JJ., concur; Crane, J., dissents.

Ordered accordingly.