EDWARD L. CURRAN, Plaintiff, *v.* CITY OF NEW YORK et al., Defendants.

Supreme Court, Special Term, Queens County, December 29, 1947.

*Charles E. Murphy, Corporation Counsel* (*Robert E. Hugh* of counsel), for City of New York, defendant.

*A. H. Feller* for Trygve Lie, defendant appearing specially.

*J. Vincent Keogh, United States Attorney, amicus curiæ.*

*Patrick I. Flannelly* for plaintiff.

HILL, J.   This is an action brought by plaintiff, a taxpayer, against the defendants praying for a judgment declaring invalid and setting aside (a) certain grants, given without consideration, of lands and easements by the City of New York to the United Nations for the headquarters site on the east side of Manhattan, (b) the allocation of funds by the board of estimate for the improvement, access to and widening of streets in the area surrounding the headquarter's site, (c) the exemption from taxation of the site and (d) the temporary use by the United Nations of the New York City Building in Flushing Meadow Park as a meeting place for the General Assembly pursuant to a license from the Park Commissioner.   All of the defendants, save Lie, move for an order dismissing the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action pursuant to rule 106 of the Rules of Civil Practice.   The defendant Lie, Secretary-General of the United Nations, appears specially, and moves for an order dismissing the complaint as against him on the ground that it appears upon the face thereof that this court has not jurisdiction of his person in that, sued as Secretary-General of the United Nations in respect of acts performed by him in his official capacity, he is immune from suit and the service of process, under subdivision (b) of section 2 and subdivision (b) of section 7 of the International Organizations Immunities Act of December 29, 1945 (59 U. S. Stat. 669, 672 [U. S. Code, tit. 22, § 288a, subd. b; § 288d, subd. b], as implemented by Executive Order No. 9698, dated Feb. 19, 1946 [Code of Fed. Reg., 1946 Supp., tit. 3, p. 102]).

Upon the return of the motion the United States attorney for the eastern district of New York, acting under the direction of the Attorney General of the United States, submitted his petition, bringing to the attention of the court the suggestion of the Department of State, that the rights of immunity be granted to the United Nations; annexed to the petition is a photostat of a letter written under date of November 6, 1947, by the Under-Secretary of State to the Attorney General of the United States, stating that the Department of State allows, recognizes and certifies the immunity of the United Nations and of Lie as its Secretary-General. The petition prays that the claim of immunity requested of and allowed by the Department of State be given full force and effect and that the United Nations and Lie, as its Secretary-General, be declared immune from the jurisdiction and process of the court and that service of process upon Lie, as Secretary-General of the United Nations, be vacated and the complaint dismissed for want of jurisdiction.

The act of the State Department in suggesting that the United Nations and Lie, its Secretary-General, are immune from process is predicated upon articles 104 and 105 of the Charter of the United Nations, subdivision (b) of section 2 and subdivision (b) of section 7 of the International Organizations Immunities Act of December 29, 1945, and Executive Order No. 9698 of February 19, 1946, which order made the terms of the act of December 29, 1945, applicable to the United Nations and its officials.

The Department of State, the political branch of our Government, having, without any reservation or qualification whatsoever, recognized and certified the immunity of the United Nations and the defendant Lie to judicial process, there is no longer any question for independent determination by this court. (*Matter of United States of Mexico* v. *Schmuck*, 294 N. Y. 265, reaffg. on reargument 293 N. Y. 264.)

The judicial branch of our Government follows the political branch in dealing with sovereign immunity and will not embarrass the latter by assuming an antagonistic jurisdiction. (*United States* v. *Lee*, 106 U. S. 196, 209.) Neither will the judicial branch embarrass the executive arm of the Government (*Ex Parte Republic of Peru*, 318 U. S. 578, 588).

The case at bar demonstrates the wisdom of the rule that such determination by the State Department is final and controlling. The complaint herein raises delicate questions pertaining to the foreign policy of the United States and to its internal processes incident thereto. To be allowed to raise such issues in a court

of this country can serve but to embarrass the United States in the conduct of its relations with the other nations of the world. (*Matter of Baiz,* 135 U. S. 403; *United States* v. *Pink,* 315 U. S. 203, 223; *United States* v. *Belmont,* 301 U. S. 324; *Wulfsohn* v. *Russian Socialist Fed. Soviet Republic,* 234 N. Y. 372, 376.)

It follows that the court is bound to accord recognition to and uphold the suggestion of immunity presented by the Department of State, through the United States attorney for the eastern district of New York.

This brings us to a consideration of the motion made by the City of New York.

The complaint, containing two causes of action, attacks the grants of lands and easements by the city to United Nations, with respect to its headquarters site, the exemption from taxation and allocation of funds for the improvement of the surrounding area and the city's license to the United Nations for the use of the New York City building at Flushing Meadow Park as a temporary meeting place for the General Assembly of the United Nations.

The material facts deemed admitted, for the purposes of this motion, are: Prior to December 13, 1946, John D. Rockefeller, Jr., acquired an option to purchase most of the land on the east side of Manhattan between 42d and 48th Streets and east from First Avenue to the East River. This he offered to give to the United Nations for use as a headquarters site upon certain express conditions. In these conditions Mr. Rockefeller stipulated that the City of New York must agree to convey to the United Nations its title to the particular streets in the area, to acquire and convey to the United Nations certain properties not included in his option in order to round out the site and to give to the United Nations all rights to bulkheads and piers along the river frontage on the East River between 42d and 48th Streets.

At a meeting of the board of estimate on December 13, 1946, the board adopted a resolution agreeing to meet the conditions contained in Mr. Rockefeller's offer to the United Nations. On February 27, 1947, the New York State Legislature enacted chapters 23, 24 and 25 of the Laws of 1947.

Chapter 23 amended the Administrative Code of the City of New York and declared that as a matter of legislative determination the public purpose would be served and the interests of the State and the City of New York promoted by the ceding and granting to the United Nations of the land to be used as the headquarters site, and, among other things, authorized the City of New York to cede to the United Nations, with or without con-

sideration, any interest which the city had or should acquire, including wharf property or land in the bed of closed or discontinued streets.

Chapter 24 amended the Tax Law and granted an exemption from taxation to the real property of the United Nations to be used as a headquarters site and the real property of any worldwide international organization established to accomplish the same purposes.

Chapter 25 amended the State Law and authorized the United Nations to acquire land for its uses and purposes provided for the recording of its deeds and further provided for the ceding of jurisdiction by the State, with respect to such land, when used for the headquarters of the United Nations.

Thereafter, pursuant to chapter 23 of the Laws of 1947, the board of estimate adopted resolutions authorizing conveyances, without consideration, of the city's right, title and interest in and to portions of land located in the headquarters area between 42d and 43d Streets and between 47th and 48th Streets, and title to the streets in the area, together with easements over certain marginal lands, bulkheads and piers on the East River between 42d and 48th Streets. (Resolutions of the board of estimate dated March 27, 1947, May 22, 1947, August 28, 1947.)

In accordance with the provisions of chapter 24 of the Laws of 1947, the headquarters site of the United Nations will be exempted from taxation on the tax rolls of the City of New York.

The board of estimate has allocated and set aside certain funds to be expended for the improvement of the surrounding area and means of access to the United Nations headquarters site. (Resolution of board of estimate dated March 27, 1947.)

The allegations of the complaint must be viewed in respect of their sufficiency in the light of existing law. In 1945, in the exercise of the President's power " by and with the Advice and Consent of the Senate, to make Treaties " (U. S. Const., art. II, § 2, par. 2), the United States signed and ratified the multilateral treaty known as the Charter of the United Nations. The treaty came into force on October 24, 1945, upon the deposit of the number of ratifications required by article 110 of the charter.

The preamble to the Charter of the United Nations sets forth the purposes of the organization:

" 1. To maintain international peace and security, and to that end: to take effective collective measures for the prevention and removal of threats to the peace, and for the suppression of acts of aggression or other breaches of the peace, and to bring about by peaceful means, and in conformity with the principles

of justice and international law, adjustment or settlement of international disputes or situations which might lead to a breach of the peace;

" 2. To develop friendly relations among nations based on respect for the principle of equal rights and self-determination of peoples, and to take other appropriate measures to strengthen universal peace;

" 3. To achieve international cooperation in solving international problems of an economic, social, cultural, or humanitarian character, and in promoting and encouraging respect for human rights and for fundamental freedoms for all without distinction as to race, sex, language, or religion; and

" 4. To be a center of harmonizing the actions of nations in the attainment of these common ends."

By the terms of this treaty, the United States became a party, *inter alia,* to articles 104 and 105 of the charter. These provide:

" Article 104

" The Organization shall enjoy in the territory of each of its Members such legal capacity as may be necessary for the exercise of its functions and the fulfillment of its purposes.

" Article 105

" 1. The Organization shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfillment of its purposes."

That these provisions, in a treaty made under the authority of the United States, are the law of the land, needs no argument. Paragraph 2 of article VI of the Constitution of the United States provides: " This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Even without further action by Congress or by the State, the effect of article 104 would be to give to the United Nations the legal status and capacity to own land in the United States. Also, that without further action by Congress or the State, the immunities " necessary for the fulfillment of its purposes ", conferred upon the United Nations by article 105, includes immunity from taxation.

Furthermore, in implementation of the charter, Congress passed the International Organizations Immunities Act (59 U. S.

Stat. 669), which, pursuant to its terms, was made applicable to the United Nations by Executive Order No. 9698 of February 19, 1946. This, too, then, as a law of the United States, is the supreme law of the land.

By House of Representatives concurrent resolution 75, December 11, 1945 (59 U. S. Stat. 848), the Congress invited the United Nations " to locate the seat of the United Nations Organization within the United States ". To effectuate this resolution, the Congress, by Public Law 357, 80th Congress (1st Sess.), authorized the President of the United States to bring into effect a " Headquarters Agreement," negotiated by the Secretary of State and Secretary-General of the United Nations.

These acts of national legislation were in furtherance of our national policy, and they were further clarified by the Legislature of the State of New York in enacting chapters 23, 24 and 25 of the Laws of 1947, which this court holds valid, and in view of all of which, so much of the 19th paragraph of the complaint as attacks their validity, must fall.

The remainder of the allegations contained in the 19th paragraph of the complaint represent the plaintiff's personal, political opinion, in respect of which this court makes no comment except to say that they should be addressed to the political branch of the Government not the judicial. This court is concerned with the legality rather than the wisdom of the acts of which the plaintiff complains.

The second cause of action proceeds upon the theory that the action of the City of New York's officials in permitting the United Nations to use the New York City building at Flushing Meadow Park as a temporary meeting place for the General Assembly, is a waste of public property. The mere use of the building by the United Nations, pursuant to a license, without more, does not constitute a waste or dissipation of city property. (*Campbell* v. *City of New York*, 244 N. Y. 317.)

While it be true, generally, that land dedicated as a park is inalienable without legislative fiat, it seems to this court that the temporary use for such obvious public purpose would be permissible under the law as enunciated in all of the leading cases on the subject. (*People ex rel. Swan* v. *Doxsee*, 136 App. Div. 400, affd. 198 N. Y. 605; *Gushee* v. *City of New York*, 42 App. Div. 37 [1899]; *Matter of Central Parkway*, 140 Misc. 727 [1931]; *American Dock Co.* v. *City of New York*, 174 Misc. 813, affd. 261 App. Div. 1063, affd. 286 N. Y. 658; *Reid* v. *City of Fulton*, 181 Misc. 711 [1944].)

It follows that the motion to dismiss the complaint is granted. Settle order.