### UNITED STATES v. COPLON et al.

United States District Court
S. D. New York.
May 10, 1949.

John F. X. McGohey, United States Attorney, New York City (Thomas J. Donegan, Special Assistant to Attorney General, of counsel), for plaintiff.

Fowler Hamilton, Washington, D. C., amicus curiae.

RIFKIND, District Judge.

On March 4, 1949, defendant Gubitchev was arrested and on March 10, 1949 was indicted of conspiracy to violate and of violations of the espionage laws.[1] His arraignment was adjourned from time to time, first to give him an opportunity to retain counsel and then to afford him an opportunity to decide whether he would accept the services of counsel assigned by the court. He was finally arraigned on March 15, 1949, after he had refused to accept the aid of assigned counsel. Upon his refusal to plead, the court ordered the entry of a plea of not guilty in his behalf. Federal Rules of Criminal Procedure, Rule 11, 18 U.S.C.A.

Defendant claimed diplomatic immunity and, sua sponte, the court undertook to examine the question of its jurisdiction to try the defendant for the offense charged.[2]

At the court's request, Mr. Fowler Hamilton, the attorney whom I had assigned to represent the defendant, filed an excellent brief, amicus curiae, together with a statement of the facts uncovered by him in the course of his inquiry. The Govern-

[1] The indictment charges:

"That * * * Valentine A. Gubitchev * * * unlawfully, wilfully and knowingly, did combine, conspire, confederate and agree * * * to violate the provisions of Sections 793, 794 and 2071, Title 18, United States Code, and to defraud the United States * * *.

"That * * * Valentine A. Gubitchev * * * for the purpose of obtaining information respecting the national defense, did unlawfully attempt to receive and obtain * * * documents, writings, and notes relating to the national defense, * * * knowing that the same had been and would be obtained, taken, and made by Judith Coplon contrary to the provisions of Chapter 37 of Title 18 of the United States Code."

[2] I have assumed for the purposes of this inquiry that a claim of diplomatic immunity raises a jurisdictional question. Bergman v. De Sieyes, 2 Cir., 1948, 170 F.2d 360, and Id., D.C.S.D.N.Y.1946, 71 F.Supp. 334, 335. Cf. Curran v. City of New York, Sup.1947, 191 Misc. 229, 77 N.Y.S.2d 206.

It has been suggested that the defendant, unless he is an ambassador or chief representative, cannot raise the question because it is a privilege of the sovereign whose representative alone can invoke it. See Trost v. Tompkins, D.C.Mun.App. 1945, 44 A.2d 226, 232, and cases cited. Cf. 1 Hyde International Law 750, 753 (1st ed. 1922).

ment likewise submitted a helpful brief, together with copies of two aides-memoire transmitted by the State Department to the Soviet Embassy.

■ I. The defendant is a citizen of the Union of Soviet Socialist Republics. He entered the United States on or about July 20, 1946. At the time of his arrest he was employed as a member of the staff of the Headquarters Planning Office of the Secretariat of the United Nations.

Such status does not per se confer diplomatic immunity under generally accepted principles of international law. Comment, 1948, 46 Michigan Law Review 381. See authorities cited in Note, 1946, 55 Yale Law Journal 778, 780, and particularly footnotes 9 and 10. Nor does the defendant, by reason of such employment, possess immunity from prosecution for the offense charged by virtue of any law or treaty of the United States, for the only possible sources of such a privilege are the statutes and treaties hereinafter discussed, and they do not confer the immunity asserted.

He is not protected by 22 U.S.C.A. §§ 252 and 254, because he is not a public minister of a foreign state, authorized and received as such by the President, nor a domestic or domestic servant of one.

Executive Order No. 9698, 22 U.S.C.A. § 288 note, 11 Fed.Reg. 1809 has made the International Organizations Immunities Act, 22 U.S.C.A. § 288, applicable to the United Nations. But that Act does not avail the defendant. It does not confer general diplomatic status or immunity, §§ 288e(c). It does confer immunity on United Nations officers and employees for the category of acts performed by them in their official capacity and falling within their functions as such officers or employees. § 288d(b). The offense charged against the defendant does not fall within such a category.

The United States is party to the United Nations charter, Article 105 of which provides:

"2. Representatives of the Members of the United Nations and officials of the Organization shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their function in connection with the Organization.

"3. The General Assembly may make recommendations with a view to determining the details of the application of paragraphs 1 and 2 of this Article or may propose conventions to the Members of the United Nations for this purpose." 59 Stat. 1031, 1053.

The Charter provision in and of itself—assuming it to be self-executing—does not shield the defendant. It seems clear that unlawful espionage is not a function of the defendant as an employee of the United Nations. Freedom from arrest for such conduct, it would seem, is not a privilege or immunity necessary for the independent exercise of defendant's function in connection with the United Nations.

The General Assembly in compliance with subdivision 3 quoted above has proposed a convention for the application of Article 105 of the Charter.[3] However, the United States has not yet adhered thereto.

The last possible source of privilege for the defendant, as an employee of the United Nations, is the Headquarters Agreement between the United States and the United Nations, 1947, 61 Stat. 756. That agreement will receive further treatment hereinafter. Suffice it to say at this point that this agreement does not, by virtue of his employment relationship to the United Nations alone, confer any immunity upon the defendant.

It follows from the foregoing that defendant's status as an employee of the United Nations conferred upon him no

---

[3] Resolution of the General Assembly, 31st Plenary meeting, 13 February 1946. Article V thereof is narrow in the scope of the immunity it grants subordinate United Nations officials, including only immunity from legal process for official acts and words spoken or written in an official capacity; and immunity from taxation, national service, immigration restrictions and alien registration. The narrowly confined language of the convention makes it clear that the United Nations itself does not conceive the charter phrase, "Such privileges and immunities as are necessary," to encompass subordinate officials' freedom from arrest for crimes unconnected to the exercise of their United Nations functions.

privilege or immunity which should constitute an obstacle to his apprehension, trial or conviction for the offense charged in the indictment.

■ II. It is suggested, however, that defendant may have an additional status which entitles him to immunity. Prior to his arrival in the United States defendant was a Third Secretary of the Ministry of Foreign Affairs of the U.S.S.R. Upon his arrival he carried a Soviet diplomatic passport bearing a United States diplomatic visa, issued under § 3(7) of the Immigration Act of 1924 as amended 1945, 59 Stat. 672, 8 U.S.C.A. § 203(7). That Act accords non-immigrant status to "a representative of a foreign government in or to an international organization * * * or an alien officer or employee of such an international organization * * *" and their servants, employees, and so forth.[4] On July 26, 1946, defendant signed an application for employment by the United Nations in which he described himself as a Third Secretary, employed by the Ministry of Foreign Affairs of the U.S.S.R.[5]

Even if we assume that at the time of his arrest defendant was still a Third Secretary of the Soviet Ministry of Foreign Affairs, it is clear that he was not thereby clothed with diplomatic immunity. The dispositive fact is that the State Department has declared to the Soviet Embassy by aide-memoire of March 24, 1949, and aide-memoire of April 29, 1949, that defendant does not enjoy diplomatic status. That is a political decision which the courts do not review. See In re Baiz, 1890, 135 U.S. 403, 432, 10 S.Ct. 854, 34 L.Ed. 222; Sullivan v. State of Sao Paulo, 2 Cir., 1941, 122 F.2d 355, 357-358. United States v. Benner, C.C.E.D.Pa. 1830, Fed.Cas.No.14,568; United States v. Ortega, C.C.E.D.Pa. 1825, Fed.Cas.No.15,971; United States v. Liddle, C.C.D.Pa., 1808, Fed.Cas.No.15,598.

■ Here review would confirm the decision of the State Department. It does not appear that he entered the United States as an emissary from the U.S.S.R. to the United States. He was never received as such. He was never attached to the Soviet Embassy. He was never notified to the United States as attached to the Soviet Embassy. He never acted in any diplomatic capacity in the United States.

The State Department in its aide-memoire of April 29, 1949, states that in appropriate circumstances the U.S. also extends diplomatic privileges to foreign officials who are accredited as diplomatic officers to other governments, to international conferences, or who are on other diplomatic missions. The defendant, however, has never been so accredited and such privileges have never been extended to him.

But even if we assume that he is a foreign emissary and that he entered as such, it is clear that he was not so received. A foreign emissary not accepted by the government to which he is accredited may, perhaps, under international law or as a matter of comity be entitled to diplomatic immunity for a reasonable time pending his departure. Cf. 1 Hyde International Law, 756 (1st ed. 1922) Considering the length of defendant's stay and his entry upon and continuance in a non-diplomatic position it can hardly be urged that such a principle is applicable to him.

It follows that defendant has obtained no immunity by reason of any connection he may have or have had with the foreign ministry of the U.S.S.R.

■ III. There is the further possibility that in addition to his United Nations employment defendant had the status of a member of the Soviet Delegation to the United Nations and that in that capacity he may enjoy rights additional to those incidental to his United Nations employment. There is nothing in the record facts assembled by amicus curiae or the United States to support this supposition. How-

---

4 Cf. Section 13(a), U.S.—U.N. Headquarters Agreement, 1947, 61 Stat. 761.

5 It should be noted that on his application at the United States Embassy in Moscow for a diplomatic visa there is reported to be a notation that he sought admission to the United States as a "Third Secretary of the Secretariat of the United Nations Organization". There is no such position or rank in the United Nations Organization. The State Department regards the notation as a clerical error and assumed it to mean Third Secretary of the Soviet Delegation to the United Nations. Aide-Memoire of April 29, 1949.

476

ever, in the aide-memoire of March 24, 1949, the State Department did declare to the Soviet Embassy that defendant came to the United States in 1946 as a member of the Soviet Delegation to the United Nations. As already noted, footnote 5, the subsequent aide-memoire of April 29, 1949, attributes this statement to an assumption by the State Department derived from a probable clerical error. Be that as it may, defendant derives no benefit therefrom. The State Department informs me that it has consistently drawn a distinction between representatives of a foreign government and representatives or members of an international organization. It has never recognized the latter as possessed of diplomatic status ipso facto even if the United States is a party to the particular international organization. See 4 Hackworth, Digest of International Law, 419-423. The Government argues that by virtue of Article 100[6] of the United Nations Charter, one may not simultaneously be an employee of the United Nations and a member of one of the national delegations and that defendant's acceptance of employment in the U. N. Secretariat terminated any membership he may have had in the Soviet Delegation. But I need not pass on that question. The Headquarters Agreement, 1947, 61 Stat. 756, between the United States and the United Nations cannot but be read as an acknowledgment and an acceptance of the State Department's position with respect to international organizations as hereinabove defined. Examination of the text of § 15 of the Headquarters Agreement,[7] leaves no room for doubt that defendant is not entitled to the immunities therein enumerated, even if he were a member of the Soviet Delegation. He is not the principal resident representative nor is he a person agreed upon by the United States, the United Nations and the Soviet Government.

■ Even if, arguendo, assumption is piled upon assumption and defendant is treated as having been and still being a member of the Soviet Delegation and as having possessed diplomatic immunity under some principle of international law upon his entry into the United States by virtue of that status, nevertheless the Headquarters Agreement, executed in December, 1946, and ratified in August, 1947, constituted notice that such immunity would no longer be acknowledged. More than a year having passed, he can hardly

6 "In the performance of their duties the Secretary-General and the staff shall not seek or receive instructions from any government or from any other authority external to the Organization. They shall refrain from any action which might reflect on their position as international officials responsible only to the Organization." Article 100, Charter of the United Nations, 59 Stat. 1052.

7 "(1) Every person designated by a Member as the principal resident representative to the United Nations of such Member or as a resident representative with the rank of ambassador or minister plenipotentiary,

"(2) such resident members of their staffs as may be agreed upon between the Secretary-General, the Government of the United States and the Government of the Member concerned,

"(3) every person designated by a Member of a specialized agency, as defined in Article 57, paragraph 2, of the Charter, as its principal resident representative, with the rank of ambassador or minister plenipotentiary, at the headquarters of such agency in the United States, and

"(4) such other principal resident representatives of members to a specialized agency and such resident members of the staffs of representatives to a specialized agency as may be agreed upon between the principal executive officer of the specialized agency, the Government of the United States and the Government of the Member concerned,

"shall, whether residing inside or outside the headquarters district, be entitled in the territory of the United States to the same privileges and immunities, subject to corresponding conditions and obligations, as it accords to diplomatic envoys accredited to it. In the case of Members whose governments are not recognized by the United States, such privileges and immunities need be extended to such representatives, or persons on the staffs of such representatives, only within the headquarters district, at their residences and offices outside the district, in transit between the district and such residences and offices, and in transit on official business to or from foreign countries."

be said to have remained in the country under a misapprehension.

■■ IV. Article 3, Section 2 of the United States Constitution provides, "In all Cases affecting Ambassadors, other public Ministers and Consuls * * * the supreme Court shall have original Jurisdiction."

28 U.S.C.A. § 1251 provides:

"(a) The Supreme Court shall have original and exclusive jurisdiction of * * * (2) all actions or proceedings against ambassadors or other public ministers of foreign states or their domestics or domestic servants, not inconsistent with the law of nations".

In the light of the previous discussion it seems plain that defendant is not a "public minister" within the meaning of these provisions. The statutory definition of minister which is contained in Title 22 U.S.C.A. § 178, is limited to the person invested with and exercising the principal diplomatic functions and is, by its terms, not made applicable to 28 U.S.C.A. § 1251 and consequently to the problem we are here concerned with. The term "public minister generally denotes an emissary of one sovereign to another sovereign sent to perform diplomatic duties. It encompasses persons of all ranks from assistant naval attache to chief of mission. See In re Baiz, 1890, 135 U.S. 403, 419, 10 S.Ct. 854, 34 L.Ed. 222, citing 7 Op.Atty.Gen. 186; Farnsworth v. Sanford, 5 Cir., 1940, 115 F.2d 375, 379. The American cases have tended to classify as public ministers all persons entitled under international law to diplomatic immunity, regardless of rank.[8] In none of his capacities, both real and supposed, whether as a United Nations official, an official of the Soviet foreign ministry or as a member of the Soviet Delegation to the United Nations, was defendant in fact an emissary or a member of the retinue of an emissary from one sovereign to another. As a United Nations official he was no one's emissary in any sense. As a member of the foreign ministry of the Soviet he was not an emissary in fact and was never so recognized by the United States or any one else. As a member of the Delegation of the Soviet Union to the United Nations, he is not technically an emissary to a sovereign since the United Nations is not a sovereignty, having neither land, nor a people nor a government controlling them. Cf. 1 Oppenheim, International Law, 127 (3rd Ed.1920). Whatever the status of the United Nations as an International Person sui generis, like the League of Nations, with the right of legation,[9] both the United Nations and the United States have recognized in the Headquarters Agreement that only limited status was accorded to the United Nations and national delegations to the United Nations.

I conclude that the defendant is not a public minister, that he does not possess diplomatic immunity, and that this court has jurisdiction to try him on the indictment.

---

[8] Perhaps because of the constitutional phrase "Ambassadors [and] other public Ministers" and perhaps because several of the early cases already cited in the text were criminal prosecutions under the statute making it a federal crime to assault a foreign "public minister" the courts have in practice equated possession of diplomatic immunity with possession of the status of "public minister." Whether under the law one may possess the former without being the latter and vice versa I find it unnecessary to decide in this case. Cf. 4 Moore, International Law Digest, § 627 (1906).

[9] 1 Oppenheim, International Law 543 (3rd Ed.1920).