**BALFOUR, GUTHRIE & CO., Limited, et al.**
**v. UNITED STATES et al.**

No. 25325.

United States District Court
N. D. California, S. D.

May 5, 1950.

Lillick, Geary, Olson, Adams & Charles, James L. Adams, San Francisco, Cal., Bigham, Englar, Jones & Houston, New York City, for libelants.

Frank J. Hennessy, United States Attorney, San Francisco, Cal., for respondent United States.

F. W. Dorr, Dorr, Cooper & Hays, San Francisco, Cal., of counsel and for respondent American Pac. S. S. Co.

GOODMAN, District Judge.

The competency of the United Nations to sue the United States in Federal Court under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., is the principal and unique question tendered by the exceptions to the libel of the United Nations and other joint libelants. As well do the exceptions question the right of the United Nations to maintain the libel against American Pacific Steamship Co., a co-respondent.

The libel alleges that in the autumn of 1947, the United Nations' International Children's Emergency Fund shipped from the ports of Tacoma and Oakland aboard the SS Abraham Rosenberg a large quantity of powdered milk destined for Italy and Greece. A portion of the shipment, it is alleged, was never delivered to the consignee and another portion arrived in a damaged condition. The Abraham Rosenberg was owned by the United States and was operated under a bareboat charter by respondent American Pacific Steamship Company. The United Nations and six other shippers, whose merchandise allegedly suffered a similar fate, have joined in the libel against the United States and the American Pacific Steamship Company.

Whether the United Nations may maintain these proceedings against respondent American Pacific Steamship Company can be first and more easily answered.

The International Court of Justice has held that the United Nations is a legal entity separate and distinct from the member States. While it is not a state nor a super-State, it is an international person, clothed by its Members with the competence necessary to discharge its functions.[1]

Article 104 of the Charter of the United Nations, 59 Stat. 1053, provides that "the Organization shall enjoy in the territory of each of its Members such legal capacity as may be necessary for the exercise of its functions and the fulfillment of its purposes." As a treaty ratified by the United States, the Charter is part of the supreme law of the land.[2] No implemental legislation would appear to be necessary to endow the United Nations with legal capacity in the United States.[3] But the President has removed any possible doubt by designating[4] the United Nations as one of

---

1. Advisory Opinion, Reparation for Injuries Suffered in the Service of the United Nations, I. C. J. Reports, 1949, 174; 43 American Journal of International Law 589. (1949).

2. Constitution, Article VI, Clause 2.

3. See Curran v. City of New York, S.Ct. 1947, 191 Misc. 229, 77 N.Y.S.2d 206, 212 affirmed 2d Dep't 1949, 275 App.Div. 784, 88 N.Y.S.2d 924.

4. Executive order 9698, February 19, 1946, 11 F.R.1809, 22 U.S.C.A. § 288 note.

the organizations entitled to enjoy the privileges conferred by the International Organizations Immunities Act, 59 Stat. 669, 22 U.S.C.A. §§ 288–288f. Section 2(a) of that Act, 22 U.S.C.A. § 288a(a), states that "international organizations shall, to the extent consistent with the instrument creating them, possess the capacity—(i) to contract; (ii) to acquire and dispose of real and personal property; (iii) to institute legal proceedings." [5]

The capacity of the United Nations to maintain the libel against the American Pacific Steamship Company is completely consistent with its charter. The libel asserts rights flowing from a contract made by a specialized agency of the United Nations in the performance of its duties. The agency, the International Children's Emergency Fund, was created by resolution of the General Assembly of the United Nations on December 11, 1946. (Resolution 57(1), United Nations Yearbook 1946-47, 162). Its function is to promote child health generally and in particular to assist the governments of countries, that were the victims of aggression, to rehabilitate their children. The solution of international health problems is one of the responsibilities assumed by the United Nations in Article 55 of its Charter, 59 Stat. 1045.

■ Whether the United Nations may sue the United States is a more difficult question. It is apparent that Article 104 of the Charter of the United Nations was never intended to provide a method for settling differences between the United Nations and its members.[6] It is equally clear that the International Organizations Immunities Act does not amount to a waiver of the United States' sovereign immunity from suit. The precise question posed is whether the capacity to institute legal proceedings conferred on the United Nations by that Act includes the competence to sue the United States in cases in which the United States has consented to suits by other litigants.[7]

■ The broad purpose of the International Organizations Immunities Act was to vitalize the status of international organizations of which the United States is a member and to facilitate their activities.[8] A liberal interpretation of the Act is in harmony with this purpose.

■ The considerations which might prompt a restrictive interpretation are not persuasive. It is true that history has recorded few, if any, instances in which international entities have submitted their disputes to the courts of one of the disputing parties. But international organizations on a grand scale are a modern phenomena. The wide variety of activities in which they engage is likely to give rise to claims against their members that can most readily be disposed of in national courts. The present claim is such a claim. No political over-

5. The General Convention on Privileges and Immunities of the United Nations approved by the General Assembly of the United Nations on February 13, 1946 has never been acceded to by the United States. The provision in respect to the capacity to institute legal proceedings, however, is identical with the provision in the International Organizations Immunities Act. For text of the Convention see, Resolutions Adopted by the General Assembly During the First Part of the First Session from January 10 to February 14, 1946, page 25; United Nations' Yearbook 1946-1947, 99.

6. See The Report to the President on the Results of the San Francisco Conference, Department of State Publication 2349, Conference Series 71, 157–158; The Proceedings of the Sixth (legal) Committee of the General Assembly in respect to the settlement of claims for reparations against member states, as reported in 43 American Journal of International Law 460 (1949).

7. Section 2 of the Suits in Admiralty Act, 41 Stat. 525, 46 U.S.C.A. § 742, permits a libel in personam to be brought against the United States in respect to United States' vessels employed as merchant vessels "in cases where if such vessel were privately owned or operated" a proceeding in admiralty could be maintained. Section 3 of that Act authorizes the libelant, at his election, to proceed in accordance with the principles of libels in rem.

8. See House Report 1203, 79th Congress, First Session.

834

tones surround it. No possible embarrassment to the United States in the conduct of its international affairs could result from such a decree as this court might enter. A claim for cargo loss and damage is clearly susceptible of judicial settlement. Particularly is this so in this litigation inasmuch as the United Nations' claim is one of several of the same nature arising out of the same transaction or occurrence.[9]

International organizations, such as the United Nations and its agencies, of which the United States is a member, are not alien bodies. The interests of the United States are served when the United Nations' interests are protected. A prompt and equitable settlement of any claim it may have against the United States will be the settlement most advantageous to both parties. The courts of the United States afford a most appropriate forum for accomplishing such a settlement.

It may be contended that since international organizations are granted immunity from suit by the International Organizations Immunities Act, an equitable and complete judicial settlement of claims asserted against the United States may not be had. But this possible objection is more fancied than real. For the United Nations submits to our courts when it urges it claim and cannot consequently shut off any proper defenses of the United States.

Finally, it cannot be denied that when the Congress conferred the privileges specified in the International Organizations Immunities Act, it neither explicitly or implicitly limited the kind or type of legal proceedings that might be instituted by the United Nations. There appears to be no good reason for the judicial imposition of such limitations.

The exceptions of the respondents are severally overruled.

9. When, by the Suits in Admiralty Act, the United States waived its sovereign immunity against suit, reasons entirely unconnected with the personality of prospective litigants were the motivating factors. Libels in Admiralty were traditionally proceedings in rem. Substantial-

ly the purpose of the Suits in Admiralty Act was to obviate seizure of United States' vessels and to substitute therefor an action in personam. See Pineiro v. U. S., D.C.N.D.Calif.1945, 65 F.Supp. 191, note p. 192.