## REPUBLIC OF POLAND v. PAN-ATLANTIC, Inc. et al.

United States District Court
S. D. New York.
July 28, 1950.

Amen, Gans, Weisman & Butler, New York City, for plaintiff, Arnold C. Stream, New York City.

Elias, Sokolski & Melzer, New York City, for defendant Frank Stern, Raphael L. Elias, New York City.

Leo Gitlin, New York City, for defendant Harry Carr.

McGOHEY, District Judge.

The defendants Stern and Carr move separately to vacate as to them a warrant of attachment, on the ground that the action is not one on contract, express or implied;[1] and also to vacate all levies on their property, made under the warrant.

The validity of an attachment in this Court is determined by the law of New York,[2] and its courts "have * * * ex-

---

[1] N.Y. Civil Practice Act, Sec. 903, Subd. 6.

[2] Fed. Rules Civ.Proc., rule 64, 28 U.S. C.A.

amined [the plaintiff's] right in law [to a warrant of attachment] with less jealousy than upon a motion to dismiss the complaint for insufficiency in law."[3] They have held that the attachment should stand unless the papers on which it was based "clearly indicate that the plaintiffs must * * * fail",[4] and that on a motion to set aside an attachment "the original papers should be liberally construed * * * and plaintiff given the benefit of all legitimate inferences and deductions that can be made from the facts stated."[5] The application of these principles, in my view, requires denial of these motions.

The warrant here in question was issued by this court September 6, 1949, on extensive affidavits and exhibits and the complaint, all filed the same day. The affidavits and exhibits presented the following allegations of facts to the court which issued the warrant.

The plaintiff in 1947 began to purchase in the United States railroad and mining equipment with $40,000,000 loaned by Export-Import Bank at Washington, D. C.[6] In March, 1947, the plaintiff, through its American agent, engaged the defendants Pan-Atlantic, Inc., a domestic freight forwarder, and Gustav Vogel (they will hereafter be referred to as Pan-Atlantic), to arrange for and supervise, completely and with full authority, the storage, shipment and insurance of all material and equipment bought by the plaintiff. The moving defendants Stern and Carr, together with the defendants Fuchs, Liban and Vogel, are sued individually and as officers of Pan-Atlantic, Inc. The defendants Kurt M. Jachmann and Otto Friedjung are sued individually and as officers of Kurt M. Jachmann Co., Inc.

The agreement between the plaintiff and Pan-Atlantic, which was oral, provided that Pan-Atlantic should procure insurance at the lowest obtainable rates, for which, together with such actual expenditures as might be incurred in obtaining the insurance, Pan-Atlantic would be merely reimbursed. Its compensation under the agreement was to consist of fees determined by the amount of shipments made for the plaintiff. Pan-Atlantic retained the defendant Kurt M. Jachmann Co., Inc., an insurance broker, to secure the required insurance.

In May, 1949, a Senate subcommittee investigation disclosed practices by these defendants which, it was charged, resulted in monetary loss to the plaintiff, and which were condemned by an official of the Economic Cooperation Administration. Thereafter, in July, 1949, the plaintiff, comparing the charges for insurance as shown on the books of its American agent, with the cost thereof as shown on the records of The Continental Insurance Company of New York, the underwriter, discovered overcharges amounting to more than $226,000. In the Senate hearings both moving defendants, Stern and Carr, refused to testify about several Pan-Atlantic Co. checks for large sums, signed by them and drawn to "Cash", on the ground that to do so might incriminate them. Two of these checks totaling $13,000 were cashed by Carr, and one for $2,000 by Stern. Another for $5,500 bears the endorsement of the defendant Vogel, below which is written "O.K. for cash" followed by the signature of Carr. Furthermore, Carr and Stern answered evasively and unconvincingly concerning certain rebates from insurance companies totaling more than $85,000,

3. Bernstein v. Van Heyghen Freres S.A., 2 Cir., 163 F.2d 246, 248, certiorari denied, 332 U.S. 772, 68 S.Ct. 88, 92 L. Ed. 357.

4. Wulfsohn v. Russian Socialist Federated Soviet Republic, 234 N.Y. 372, 377, 138 N.E. 24, 26. See also Bernstein v. Van Heyghen, etc., N. 3 supra.

5. Ecco High Frequency Corp. v. Amtorg Trading Corp., Sup., 81 N.Y.S.2d 610, 612; reargument denied, Sup., 81 N.Y.S. 2d 897, affirmed 274 App.Div. 982, 85 N.Y.S.2d 304; reargument and leave to appeal denied, 274 App.Div. 1056, 86 N.Y.S.2d 465.

6. Repayment is to be made by coal shipments, beginning in 1952, from Poland to countries eligible under the Marshall Plan.

which were delivered to them personally in cash by the defendant Jachmann. It is fairly inferable from the affidavits and exhibits that Carr and Stern in their individual capacities actively participated in the alleged overcharging, and received in their individual capacities part of the money accruing therefrom, over and above their salaries as officers of Pan-Atlantic.

There is much more in the papers which, with what has been summarized above, was sufficient, in my opinion, to sustain a claim by the plaintiff for money had and received by Carr and Stern. And, in this action, for breach of such implied contract, "for the recovery of a sum of money only",[7] there was enough to show that these defendants were "guilty of a fraud in contracting or incurring the liability."[8]

Motions to set aside the attachment have heretofore been granted as to the defendants Kurt M. Jachmann Co., Inc., Kurt M. Jachmann and Otto Friedjung by one judge of this court, and as to the defendant Fuchs by another. These decisions, however, did not pass on the facts as to Carr and Stern. After careful study of the papers before the judge who authorized the warrant, I am persuaded that in so far as the moving defendants Carr and Stern are concerned his action was in accord with the decisions of the New York Courts referred to above.[9]

Prior to the instant motion a second amended complaint was filed.[10] It contains two causes of action. The first is for breach of contract between the plaintiff and all the defendants. The second is for money had and received by the defendants under an implied contract. The present complaint, in my opinion, is clearly good against the moving defendants Carr and Stern. It is urged, however, that the Court must disregard this second amended complaint, first, because it is not verified as were its predecessors; second, because it pleads an additional and different cause of action not before the judge who authorized the warrant, and thus may not be considered in determining now the propriety of its issuance; and third, because it pleads an action in tort, not in contract. The lack of verification is of no consequence.[11] And while an amended complaint would probably not avail to save the warrant if the original papers "upon which * * * [it] was based * * * clearly indicate that the plaintiffs must * * * fail",[12] when those papers are sufficient, as I think they were here, the complaint may be disregarded.[13] As to the "different cause of action", this depends on what is meant by that phrase. "A different form of action, involving different legal consequences from the same facts, would give rise to no such relief [vacating attachment], provided of course that this form was of the description in which attachment is a permissible remedy. A complaint is not an essential of an attachment. What is required is proof of a state of facts giving rise to a right of recovery of a sum of money. If the facts set out will support the amended complaint the amendment invokes no consequences."[14]

The second amended complaint is, in my opinion, amply supported as to the moving defendants by the affidavits and exhibits which were presented in support of the application for the warrant. The second

7. N.Y. Civil Practice Act, Sec. 902.

8. N.Y. Civil Practice Act, Sec. 903.

9. Of course, I do not herein consider or decide anything at all as to the other defendants.

10. This was pursuant to an order of Judge Noonan, holding the first cause of action in the first amended complaint bad as against "the Jachmann defendants" and granting leave to file a new complaint.

11. Fed. Rules Civ.Proc., rule 11, 28 U.S. C.A.

12. Wulfsohn v. Russian Socialist, etc., N. 4 supra.

13. Brown v. Chaminade Velours, Inc., 176 Misc. 238, 240, 26 N.Y.S.2d 1009, affirmed 261 App.Div. 1071, 27 N.Y.S.2d 1012.

14. Nicholas & Co., Inc. v. Societe Anonyme De La Vieille Care de Cenon, 189 Misc. 863, 73 N.Y.S.2d 155, affirmed 272 App.Div. 1002, 74 N.Y.S.2d 403, leave to appeal denied, 272 App.Div. 1047, 75 N. Y.S.2d 285.

334

count does not plead an action in tort. The gravamen of this cause of action is the breach of an implied contract. The fraud alleged is only incidental to show how the breach came about.[15]

These motions are, therefore, denied.

Settle order.

15. Cohen v. City Co. of N. Y., 283 N.Y. 112, 117, 27 N.E.2d 803; Carr v. Thompson, 87 N.Y. 160.