## UNITED STATES v. SOLOWITZ.
### No. 6652;

Circuit Court of Appeals, Seventh Circuit.
Oct. 19, 1938.

Clarence W. Nichols and Bernard Stroyman, both of Indianapolis, Ind., and M. J. Freedman and William Feldman, both of Chicago, Ill., for appellant.

Val Nolan, U. S. Atty., and B. Howard Caughran and Paul A. Pfister, Asst. U. S. Attys., all of Indianapolis, Ind.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

The appellant, Jack Solowitz, alias Meyer Samuels, alias Jack Samuels, together with his co-defendant, Joseph Ringler, alias Joseph Riniegler, alias Joseph Riniengler, alias Joseph Reingler, alias Joseph Solinsky, were charged by a one count indictment with the violation of the Motor Theft Act, § 408, title 18 U.S.C.A. In substance, the indictment alleges that on or about the 25th day of October, 1937, they knowingly and feloniously transported a certain stolen motor vehicle (same described) in interstate commerce from Brooklyn in the State of New York to Indianapolis in the State of Indiana, with knowledge that the said motor vehicle was a stolen one. A trial was had by jury, both defendants found guilty and judgment of the court pronounced upon the verdict. A motion for a directed verdict was submitted at the conclusion of the Government's evidence and again at the conclusion of all the evidence, which motions were denied.

The chief error assigned is as to the sufficiency of the evidence to sustain the verdict of guilty as to appellant. The evidence is undisputed that on October 5, 1937, the motor vehicle described in the indictment was stolen in Brooklyn, New York and that on or about October 25, 1937, it was transported by appellant and his co-defendant to Indianapolis, Indiana. It is also undisputed that appellant was in possession of the stolen motor vehicle at the time of his arrest in Indianapolis on October 25, 1937. The only question in dispute is whether appellant had knowledge that such was stolen at the time it was transported in interstate commerce. The Government, as might be expected, relies largely upon circumstances to establish this essential element in dispute.

It is disclosed that appellant, on the afternoon of October 25, 1937, drove the vehicle in question to the 2100 block on East Washington Street in the City of Indianapolis, which is the address of a dealer in second hand cars; that he got out of the car at 2109 East Washington Street, leaving the keys on the seat. In the meantime a Sergeant in the Police De-

partment received an anonymous telephone call advising him that a stolen car was to be disposed of at the address where appellant was arrested. Two officers were sent to this address and located themselves at points where they could watch for the car. In a short time appellant drove up in the car, parked it, got out and walked up and down the sidewalk where he was shortly arrested a few feet from the car. When asked as to his business in that location appellant told the officers that he was there to meet a man by the name of Ringler. He denied having any connection with the car and insisted that he could not even drive one. He gave his name as Meyer Samuels, but refused to tell where he lived. He also stated at that time he and Ringler were on their way to Texas to buy up some bankruptcy stocks. Later, in the same conversation and after he was aware that the officers had seen him in the car, he admitted that he had driven it to the location where he was arrested. While at the time of his arrest he told the officers there was no one with him and Ringler on their trip to Indiana, at the trial they both insisted there was a third person who accompanied them by the name of Jack Lewis. It appears from the record that Lewis was a mythical person devised for the purpose of shifting responsibility. After his arrest he was interviewed by various agents of the Government and told many conflicting stories concerning the route which they traveled from New York to Indianapolis, and as to the time they arrived in that city. In fact, the testimony given by appellant at the trial varied in many important details with the statements which he had formerly made to the officers and agents. We do not regard it as necessary to relate these various contradictory statements in detail. It is sufficient for us to conclude that the acts and conduct of appellant, taken in connection with the false, misleading and contradictory statements made by him at the time of his arrest and subsequently, can not be easily reconciled on any theory consistent with lack of knowledge. Certainly, there was substantial evidence tending to prove this controverted question and under such circumstances it was the duty of the court to submit the question to the jury.[1] We are unable to comprehend how the jury could have reasonably arrived at any conclusion other than that the appellant had knowledge, as charged.

It is also claimed the indictment is insufficient. We have examined the same and think there is no merit in this contention. Complaint is made as to certain instructions given by the Trial Court. No exception was taken to the charge as given, and in addition, a reading of the same discloses the charge was quite fair to appellant. Error is also assigned in the refusal of the Court to admit evidence referred to as Exhibits A-1 and A-2. The former appears to be a letter written by a third person in California to another person in New York suggesting that a job is available for appellant if he comes to California. The latter exhibit is the envelope in which this letter was transmitted through the mail. The record does not disclose when the letter was received by appellant, but the envelope bears the postmark, Los Angeles, California, November 27, 1937. This was more than a month after appellant's arrest, and on what theory it could have been material, we are unable to conceive. Clearly there was no error in its refusal.

It is also urged that appellant was prejudiced by charging him and his co-defendant under a number of aliases. True, this practice has been criticised by some courts,[2] and we think, not without merit. Of course, if a person has used names other than his right name, as the record discloses was the case so far as appellant is concerned, and the Government proves such aliases, there can be no legitimate complaint. Otherwise, it is not difficult to see how a defendant might be prejudiced before a jury. We do not believe, however, the aliases attached to appellant's co-defendant, under the circumstances shown to exist, could have had any harmful effect as to appellant.

We are convinced that the defendant had a fair trial and that the judgment of the court below is proper.

Affirmed.

[1] Cossack v. United States, 9 Cir., 82 F.2d 214, 215; Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 18, 63 L. Ed. 1173; Pierce v. United States, 252 U.S. 239, 251, 40 S.Ct. 205, 210, 64 L.Ed. 542.

[2] D'Allessandro v. United States, 3 Cir., 90 F.2d 640; People v. Maroney, 109 Cal. 277, 41 P. 1097.