## UNITED STATES v. COPLON et al.

United States District Court
S. D. New York.

Jan. 9, 1950.

See also 88 F.Supp. 912, 88 F.Supp. 921.

916

Irving H. Saypol, United States Attorney, New York City, attorney for plaintiff, John M. Kelley, Jr., Raymond P. Whearty and Fred E. Strine, Special Assistants to the Attorney General, of counsel.

Archibald Palmer, New York City, attorney for defendant Coplon.

Pomerantz, Levy, Schreiber & Haudek, New York City, attorneys for defendant Gubitchev, Abraham L. Pomerantz, New York City, of counsel.

RYAN, District Judge.

Defendant Gubitchev moves to dismiss the indictment against him on the grounds that the court is without jurisdiction over him by reason of his diplomatic immunity and that exclusive jurisdiction of this cause is vested in the Supreme Court of the United States, under 28 U.S.C.A. § 1251. The latter contention was considered *sua sponte* and rejected by Judge Rifkind in a well-

reasoned opinion. D.C., 84 F.Supp. 472. At that time defendant Gubitchev was not represented by counsel, he having persistently refused the services of counsel repeatedly offered him by the judges of this court. Mr. Fowler Hamilton, acting as *amicus curiæ* at the court's request, submitted to Judge Rifkind an exhaustive and scholarly memorandum on the subject of diplomatic immunity. Judge Rifkind concluded that the defendant was not a "public minister" within the meaning of Section 1251, 28 U.S.C.A. which conclusion was justified by the evidence and which I accept as the law on that point.

Gubitchev has since retained counsel of his own choosing and now moves for reargument and reconsideration of the question of jurisdiction. As the trial judge, I have entertained this motion, granted reargument and taken proof in the form of documentary exhibits. At the outset of the hearings on this motion, Mr. Lev. S. Tolokonnikov, First Secretary of the Embassy of the Union of Soviet Socialist Republics to the United States of America, appeared before me and submitted a communication from His Excellency Alexander S. Panyshkin, Ambassador Extraordinary and Plenipotentiary of the Union of Soviet Socialist Republics to the United States, reading as follows:

"December 10, 1949
"To the Honorable District Judges of the U. S. District Court for the Southern District of New York.

"Honorable Sirs:
"I hereby have the honor to draw your attention to the fact that the Soviet citizen, Valentin A. Gubitchev, is an officer of the diplomatic service in the Ministry of Foreign Affairs of the USSR since April 26, 1946, with the diplomatic rank of Third Secretary.

"In this capacity, Mr. Gubitchev V. A. was sent, with the permission of the Government of the Union of Soviet Socialist Republics, to the USA to work in the Secretariet of the United Nations Organization.

"Mr. Gubitchev V. A. arrived in the USA in July, 1946, having the Soviet Dip-

lomatic Passport No. 12032 and the Diplomatic Visa No. 202 issued by the USA Embassy in Moscow on June 24, 1946.

"The Soviet Government has not revoked the diplomatic status of Mr. Gubitchev V. A. and up to the present time he remains an officer of the Ministry of Foreign Affairs of the USSR, with the diplomatic rank of Third Secretary.

"Respectfully

/signed/ Alexander S. Panyshkin
Ambassador Extraordinary and Plenipotentiary of the USSR to the USA"

(Gubitchev Ex. 1)

Although the presentation of such a communication from a foreign ambassador to a judge in a pending criminal trial appears to be without precedent, I received it as a courtesy and forwarded it to the Secretary of State. (Court's Ex. 1)

The charges against this defendant are serious; his allegedly unlawful activities, it is charged, were directed against the Government of the United States and were liable to endanger its security as well as its peace with other nations. The Department of State has in the past had occasion to remind foreign governments that even if they have the right to interpose the defense of diplomatic immunity, they should not, under international law, so interfere with the course of justice or permit such privileges, if they exist, to shield from just punishment a perpetrator of crimes such as the ones here charged. (Cf., Matter of Wolf Van Igel, attached to the German Embassy, 1916 For.Rel.Supp. 808–815.)

Counsel for Gubitchev concedes that (1) he is not a diplomatic officer of the Union of Soviet Socialist Republics attached to the Soviet Embassy in this country, and (2) the defendant was neither sent to, received nor accredited by our Government.

But, it is urged on this motion that Gubitchev, a diplomatic officer of the USSR, came to this country to accept a position with the Secretariat of the United Nations, in possession of a diplomatic passport issued by the Ministry of Foreign Affairs of the USSR and a diplomatic visa issued by the United States Embassy in Moscow, and that, therefore, under the Law of Nations, he is entitled to be received in this country in a diplomatic status with all the privileges and immunities of a diplomat—including immunity from prosecution on the indictment herein.

The documentary proofs received on the hearing of this motion establish to my satisfaction the following:

1. Defendant is a citizen and national of the Union of Soviet Socialist Republics.

2. He was appointed Third Secretary of the USA Division of the Ministry of Foreign Affairs of the USSR, on April 26, 1946. (Gubitchev Ex. 2)

3. The Ministry of Foreign Affairs of the USSR certified that Gubitchev was given diplomatic rank as Third Secretary of the USA Division by order 319 of the Ministry of Foreign Affairs of the USSR, on May 15, 1946. (Gubitchev Ex. 3)

4. Gubitchev was considered from July 4, 1946, by the said Ministry to be "in a mission of long duration in connection with his departure to the USA to accept the position in the Secretariat of the United Nations Organization." (Gubitchev Ex. 4)

5. In connection with his journey to this country the Ministry of Foreign Affairs of the USSR issued to him a diplomatic passport in which Gubitchev was designated and described by the People's Commissar for Foreign Affairs as a "citizen of the Union of Soviet Socialist Republics" and "Collaborator of the Secretariat of the United Nations Organization, Third Secretary." (Gubitchev Ex. 6)

6. The said Ministry of Foreign Affairs, on June 13, 1946, requested the United States Embassy in Moscow to grant Gubitchev, his wife and minor daughter, a diplomatic visa and Laissez-Passer on his passport. This request listed Gubitchev and family along with five other individuals (and the families of three of these), all of whom were described therein as "employees of the Secretariat of the United Nations Organization." (Gubitchev Ex. 5)

7. The United States Embassy in Moscow stamped on Gubitchev's passport a

918

diplomatic visa for his journey to this country on June 24, 1946 under authority of Section 3(7) of the Immigration Act of 1924.[1]  (Gubitchev Ex. 6)

8. Gubitchev was admitted to this country at New York City on July 20, 1946 for the duration of his status on the passport and visa above set forth; since that date he has resided in the United States continuously.

9. Gubitchev did not enter the United States as an emissary from the USSR to the United States; he was never received as such; he was never attached to the Soviet Embassy; he was never notified to the United States as attached to such Embassy and never acted in a diplomatic capacity in the United States.  (Court's Ex. 3).

10. After his arrival here, Gubitchev filed an application, dated July 26, 1946 with the United Nations Organization for appointment in the Secretariat; in this application he stated that he held, from May to July, 1946 the position of Third Secretary in the Ministry of Foreign Affairs of the Soviet Government; (Government Ex. 5); On September 26, 1946, effective retroactively to July 4, 1946, Gubitchev was appointed an Engineer in the Department of Conference and General Services of the Secretariat of the United Nations, Buildings Management Division, Maintenance Section, on a temporary appointment; (Government Ex. 4). The same day that he signed the letter of appointment, Gubitchev signed the oath provided for in Regulation 2 of the Provisional Staff Regulations, which oath reads as follows:

"I solemnly swear (undertake, affirm, promise) to exercise in all loyalty, discretion and conscience the functions entrusted to me as a member of the international service of the United Nations, to discharge those functions and regulate my conduct with the interests of the United Nations only in view, and not to seek or accept instructions in regard to the performance of my duties from any Government or other authority external to the Organization." (Government Ex. 2) Gubitchev was reimbursed for his traveling expenses including travel subsistence allowances from Moscow to New York by the Secretariat of the United Nations. (Government Ex. 2)

11. The name of Valentine A. Gubitchev was never submitted by the Secretary-General of the United Nations to the United States for possible inclusion in the diplomatic list of members of Delegations to the United Nations who are entitled to diplomatic privileges and immunities under the terms of the Headquarters Agreement between the United States and the United Nations.  Public Law 357, 80th Congress. (Court's Ex. 2)[2]

12. Gubitchev was arrested in New York City on March 4, 1949 and thereafter indicted by the Grand Jury of this District, on March 10, 1949, charged with violation of Sections 371 and 793, 18 U.S.C.A.  In the event of determination of the pending pre-trial motions adverse to him, trial on this indictment will commence immediately.

13. By aide-memoire, dated March 8, 1949, Washington, D. C., the Embassy of the USSR called the attention of the United States Department of State to the arrest of Gubitchev, protested his apprehension and detention and represented that the United States "having formally admitted V. A. Gubitchev into the United States on a diplomatic visa, the official organs of the USA thereby recognized his diplomatic status"; and in view of the foregoing the

1. Section 3(7) of the Immigration Act of 1924, as amended 1945, 59 Stat. 672, 8 U.S.C.A. § 203(7), provides for nonimmigrant status for certain classes as follows:

"* * * a representative of a foreign government in or to an international organization entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act, or an alien officer or employee of such an international organization, and the family, attendants, servants, and employees of such a representative, officer, or employee." (court Ex. 4)

2. The Headquarters Agreement was ratified by Congress on August 4, 1947. Public Law 357, 80th Congress, First Sess., 61 Stat. 756.

Embassy insisted on his immediate release. (Government's Ex. 1)

14. By aide-memoire dated March 24, 1949, the Department of State replied that "Gubitchev came to the United States in 1946 as a member of the Soviet Delegation to the United Nations. He had been granted a diplomatic visa, because at that time he was coming to the United States as Third Secretary in that Delegation. * * When Mr. Gubitchev became an official of the United Nations in this manner, he ceased to be a member of the Soviet Delegation and therefore could not be entitled to diplomatic immunities in the United States by virtue of any official relations to the Soviet Government." That "as a member of the Secretariat (of the United Nations), he does not have diplomatic immunities, and he enjoys immunity from legal process only in relation to acts performed by him in his official capacity and falling within his functions as an official of the United Nations." The aide-memoire concludes that "under the laws of the United States, including international agreements to which the United States is party, this Government is free to bring a person in Mr. Gubitchev's position to trial for violation of the laws of the United States." (Government's Ex. 1)

15. By aide-memoire of March 30, 1949, the Embassy of the USSR continued "to insist that the actions of the American authorities with regard to * * * Gubit-chev * * * are an indisputable violation of elementary generally recognized norms of international law, which guarantee the personal immunity of persons having diplomatic status," and that "Gubichev left for the U.S.A. as a member of the Secretariat of the United Nations with the diplomatic rank of Third Secretary and with an American visa on his diplomatic passport."

16. By aide-memoire dated April 28, 1949, the Department of State repeated the statement of its position that "under international law and the laws of the United States, except for individuals covered by Section 15 of the Headquarters Agreement between the United States and the United Nations,[3] an individual is not entitled to claim diplomatic status and immunites unless he is a foreign official accredited to the Government of the United States, notified to the Department of State and accepted by the Department for this purpose, or is a member of the family, staff or retinue of such official. The United States, also, in appropriate circumstances, extends diplomatic privileges to foreign officials who are accredited as diplomatic officers to other governments, to international conferences, and who are on other diplomatic missions. Mr. Gubitchev has never accredited to the United States Government or accepted by it, and there has been no claim that Mr. Gubitchev is entitled to diplomatic immunities by virtue of Section 15 of the Head-

3. "(1) Every person designated by a Member as the principal resident representative to the United Nations of such Member or as a resident representative with the rank of ambassador or minister plenipotentiary,

"(2) such resident members of their staffs as may be agreed upon between the Secretary-General, the Government of the United States and the Government of the Member concerned,

"(3) every person designated by a Member of a specialized agency, as defined in Article 57, paragraph 2, of the Charter, as its principal resident representative, with the rank of ambassador or minister, plenipotentiary, at the headquarters of such agency in the United States, and

"(4) such other principal resident representatives of members to a specialized agency and such resident members of the staffs of representatives to a specialized agency as may be agreed upon between the principal executive officer of the specialized agency, the Government of the United States and the Government of the Member concerned,

"shall, whether residing inside or outside the headquarters district, be entitled in the territory of the United States to the same privileges and immunities, subject to corresponding conditions and obligations, as it accords to diplomatic envoys accredited to it. In the case of Members whose governments are not recognized by the United States, such privileges and immunities need be extended to such representatives, or persons on the staffs of such representatives, only within the headquarters district, at their residences and offices outside the district, in transit between the district and such residences and offices, and in transit on official business to or from foreign countries."

quarters Agreement between the United States and the United Nations. Nor is he in the United States in the capacity of an accredited diplomatic officer on any diplomatic mission for which it would be appropriate to extend diplomatic privileges to Mr. Gubitchev as a matter of courtesy." The State Department further stated, "the Soviet aide-memoire of March 30, in claiming that Mr. Gubitchev enjoys diplomatic immunity in the United States, relies principally on his possession of a diplomatic passport and a diplomatic visa. The possession of a diplomatic passport and visa by an alien coming to the United States has never been recognized by this Government as according, of their own force, diplomatic status and immunities. Diplomatic visas are issued pursuant to the regulations of the United States Government (22 Code of Federal Regulations, Section 60.4) to individuals in numerous categories. In some of these categories, such as that which includes certain consular officers, they are issued to individuals who definitely do not have diplomatic status and immunites in this country in order that they may receive special courtesies."

17. The Department of State has certified to the Attorney General by communication dated December 30, 1949 that Gubitchev did not enjoy diplomatic status in his capacity as an official of the United Nations on March 4, 1949, or at any time after that date. The Department of State has also certified that it had received communications from the Soviet Embassy concerning the status of Gubitchev, and that it had replied to them and that the "claim of diplomatic immunity for Mr. Gubitchev was rejected." (Government's Ex. 1)

On the foregoing facts, the court concludes that the defendant's motion must be denied. The claim of immunity is grounded solely on the facts that Gubitchev is a diplomatic officer of the USSR, that he was, in this capacity, sent by his government to the United Nations and that he was in possession of a diplomatic passport and diplomatic visa at the time of his arrest.

It has long been recognized that the United States will not afford diplomatic immunity unless the person claiming it not only has diplomatic status, but is also in an "intimate association with the work of a permanent diplomatic mission." 2 Hyde on International Law Sec. 416A. The Department of State has had occasion to declare that "under customary international law, diplomatic privileges and immunities are only conferred upon a well-defined class of persons, namely, those who are sent by one state to another *on diplomatic missions.*" (The Under Secretary of State to the Turkish Ambassador, Oct. 16, 1933, MS Dept. of State, file 701.09/374, 4 Hackworth, Digest of International Law, p. 422.)

This principle has been recognized by the courts of other countries. The courts of England have ruled that in order to establish the protection afforded by diplomatic immunity the evidence must establish actual service as a diplomat by the one claiming the right. Crosse v. Tabbot, 8 Mod.Rep. 288 (1724); Widmore v. Alvarez, 2 Stra. 797 (1731); 6 Halsbury's Laws of England 512; 30 Halsbury's Laws of England 129.

In the instant case, the defendant has never asserted that he came to this country on a diplomatic mission and I have found as a fact that he never acted in a diplomatic character in the United States.

The visa which was affixed to the defendant's passport did not of itself constitute a grant of diplomatic immunity for all of his activities in this country. It is provided in the Code of Federal Regulations, Section 40.4(a), that such diplomatic visas may be granted to fifteen different categories of individuals. Many of these categories embrace individuals who, it has been universally recognized, do not have diplomatic status or immunity. That diplomatic visas are on occasion granted by the Government of the United States as a matter of courtesy and do not thereby constitute a recognition of diplomatic status has been its proclaimed policy and is set forth in its duly promulgated and publicly published regulations.

Furthermore, we have in this case the certification by the Department of State that the defendant does not enjoy

diplomatic status, which, as Judge Rifkind held, is "the dispositive fact." U. S. v. Coplon, D.C., 84 F.Supp. at 475, citing cases.

Diplomatic status is a political question and a matter of state; the finding of the Secretary of State must be accepted unquestioned. The courts of the United States are not alone in applying this rule. "Thus in Great Britain, Engelke v. Musmann, 1928, A.C. 433, 435, in the United States, United States v. Liddle, 1808, Fed. Cas.No.15,598; United States v. Bennar, 1830, Fed.Cas.No.14,568, Baldw. 234; In re Baiz, 1890, 135 U.S. 403, 10 S.Ct. 854, 34 L.Ed. 222, and apparently in France Drtilek c. Barbier (1925), Cour d'appel de Paris, 53 Journal de droit international prive (1926), 638, the decision of the executive department as to whether a person is a member of a foreign mission or of its personnel is conclusive upon the courts." Research in International Law, Harvard Law School, 1932 p. 76.

There is no reason in principle why the determination of the Secretary of State in this case should not be afforded equal weight with a similar determination of the diplomatic status in the case of public ministers or ambassadors sent to represent foreign governments in this country. The latter certifications have universally been held to be conclusive upon the courts. 42 Harv. L.Rev. 582. And I feel that the certification in this case is equally conclusive.

Gubitchev was not a member of the permanent Soviet mission, nor was he included in any special Soviet mission to the United States. He did not acquire diplomatic immunity from prosecution on the instant indictment by his employment in the United Nations. He may not claim diplomatic status alleging that he was on a mission of a non-diplomatic nature. The Soviet Union itself has recognized that its personnel on missions of a non-diplomatic character may acquire diplomatic privileges and immunities only by express treaty provisions and attachment to a permanent diplomatic mission. (See, Commercial Treaty between Germany and the USSR, signed October 12, 1945 (53 L.N.T.S. No. 1257, p. 7); the USSR with Italy, February 7, 1924 (1 Raccolta Officiale della Leggi e del Decreti del Regno d'Italia (1924) No. 342, Art. 3). Gubitchev's journey here and his subsequent sojourn in this country was not embraced in an agreement or treaty of such a nature, nor was he at any time regarded as attached to the permanent Soviet mission.

Where "a person is sent by a foreign government as a special diplomatic representative for a temporary purpose, without being authorized or received by the Sovereign as an ambassador or public minister, recourse must be had to the terms of the special agreement governing his mission and the extent of diplomatic privilege determined therefrom as a question of fact." 6 Halsbury's Laws of England, 509. The possible immunities that the defendant might enjoy under the terms of the various agreements between this country and the United Nations were discussed at length by Judge Rifkind. He concluded (and with him I agree, and indeed the defendant now concedes) that the defendant received no immunity which would prevent his prosecution on the instant indictment from those agreements.

I conclude that the defendant was possessed of none of the prerogatives of a diplomat and was cloaked with no immunity from prosecution in this country for the acts charged against him.

The motion is denied.