**UNITED STATES of America, Plaintiff,**

v.

**Igor Y. MELEKH, also known as Peter Stephens and also known as "Gipsy," and Willie Hirsch, also known as John Gilmore, Defendants.**

**No. 60 Cr. 529.**

United States District Court
N. D. Illinois, E. D.
March 20, 1961.

See, also, 190 F.Supp. 67.

Robert Tieken, U. S. Atty., Chicago, Ill., Harold Ungar, Washington, D. C., for the United States.

Donald Page Moore, Chicago, Ill., Edward Bennett Williams, Washington, D. C., for defendant Melekh.

Pearl M. Hart, Chicago, Ill., for defendant Hirsch.

ROBSON, District Judge.

Each of the defendants has filed several motions attacking the validity of the indictment, the jurisdiction of the Court, and for discovery. The indictment, in three counts, alleges in Count One, a conspiracy by defendants Melekh and Hirsch with one Doronkin, to violate 18 U.S.C. § 793(a), (b), and (c), to obtain information respecting the national defense, particularly referring to military installations in Chicago and Cook County, including aerial photographs, with the intent that the material be transmitted to a foreign Government, the Union of Soviet Socialist Republics (hereinafter termed U.S.S.R.) for its advantage, in violation of 18 U.S.C. Chap. 37.

It is also charged that they would as part of the conspiracy induce a United States citizen to procure the information; that Melekh would supervise and

employ persons to obtain and transmit said information, and would activate agents for the doing of the work; that he would use the names of Peter Stephens and the pseudonym, Gipsy; and that he would devise a clandestine method of arranging meetings with persons to whom he had given assignments.

The indictment then recites thirteen overt acts in furtherance of the conspiracy, which acts consisted of Hirsch's alleged meeting with an individual in Chicago on or about July, 1958, also on or about October 24, 1958; and on or about October 25, 1958, Hirsch met with Melekh in Chicago, and on the same day and at the same place, Hirsch while using the name of John Gilmore introduced Melekh as "Peter" to an individual, and on or about the next day Melekh wrote the names "Peter Stephens" and "Gipsy" on a piece of paper in Chicago and gave an individual ten $20 bills. Another overt act alleges a meeting by Melekh on or about November 22, 1958, with a person in Newark, New Jersey, and on the same day, Doronkin went to the Pennsylvania Railroad Station in Newark; that on or about November 23, 1958, Melekh, in New York City, gave a person ten $20 bills; and on the same day Doronkin went to the vicinity of a certain subway station in Brooklyn; that on or about January 17, 1959, Melekh met an individual at Flushing, New York, and accepted a map and photograph from him and gave him $500, all in violation of 18 U.S.C. § 793.

Count Two charges the same defendants with conspiracy from in about June, 1958, to the date of the indictment, to violate 18 U.S.C. § 951, to induce a United States citizen to act as agent of the U.S.S.R., without prior notification to the Secretary of State and without his being a diplomatic official, for which the agent was to receive valuable consideration for procuring information for the U.S.S.R. It was part of the conspiracy to use fictitious names to conceal the conspiracy. The overt acts of the first count were incorporated by reference, which acts were charged to be in violation of 18 U.S.C. § 371.

Count Three charges that in October, 1958, in Chicago, Hirsch acted as an agent of the U.S.S.R. without prior notification to the Secretary of State, and at the request of the U.S.S.R. participated in a meeting between a United States citizen and a representative of the U.S.S.R. to induce the said citizen to collect information for the U.S.S.R., in violation of 18 U.S.C. § 951, and that Melekh aided in the commission of the above offense in violation of 18 U.S.C. §§ 2 and 951.

The motions of defendant Melekh which are here considered and determined are:

1. Motion to dismiss Count One of the indictment for failure to state facts sufficient to constitute an offense against the United States.

2. Motion to dismiss Counts Two and Three for failure to charge an offense against the United States.

3. Motion for bill of particulars.

4. Motion to strike overt acts 8 and 10 from Count Two of the indictment.

5. Motion to strike improper matter from the caption and body of the indictment.

6. Motion to dismiss on the ground the proceeding is within the exclusive jurisdiction of the United States Supreme Court.

7. Motion to dismiss indictment on the ground Melekh is entitled to immunity under the provisions of the United Nations Charter and principles of international law.

The motions of defendant Hirsch here considered and determined are:

1. Motion to dismiss Count One for failure to state a crime under 18 U.S.C. § 793.

2. Motion to dismiss Counts Two and Three on the ground that venue of such charges is improperly laid in the district of this Court, and for failure to charge an offense against the United States.

3. Motion for bill of particulars.

4. Motion to strike overt acts 8 and 10 from Count Two of the indictment.

5. Motion to examine minutes of Grand Jury to establish failure of evidence as to guarded nature of information and upon such finding to dismiss indictment.

*Motions of Melekh and Hirsch to dismiss Count One.* Both defendants assert the first count of the indictment is fatally defective in that it fails to allege that the information which the conspiracy concerned was "guarded" or secret information, which element the decisions hold to be essential to the existence of a crime. In other words, there is no crime where the conspiracy concerned the gathering of information readily available to all who took the trouble to seek it out and collate it. Defendants contend that the omission is one that cannot be cured by discovery or bill of particulars (Babb v. United States, 5 Cir., 1955, 218 F.2d 538; Lowenburg v. United States, 10 Cir., 1946, 156 F.2d 22); nor can it be inferred from any of the other allegations in the indictment.

Count One follows the language of the act, which defendants concede is ordinarily a sufficient basis for the phrasing of an indictment. They point out, however, that in Gorin v. United States, 1941, 312 U.S. 19, at page 28, 61 S.Ct. 429, at page 434, 85 L.Ed. 488, the Court said:

"Where there is no occasion for secrecy, as with reports relating to national defense, published by authority of Congress or the military departments, there can, of course, in all likelihood be no reasonable intent to give an advantage to a foreign government."

And in United States v. Heine, 2 Cir., 1945, 151 F.2d 813, it was held lawful to transmit any information about weapons and munitions which the services themselves made public, as well as information which the services themselves never thought it necessary to withhold. Robertson v. United States, 5 Cir., 1948, 168 F.2d 294, is cited for its holding that where a statute implies an essential ingredient of the offense, it must be alleged. And United States v. Carll, 1881, 105 U.S. 611, 612, 26 L.Ed. 1135, requires the indictment to allege all the facts and elements necessary to bring the case within the statute.

Neither the Gorin nor the Heine case concerned a direct attack on the sufficiency of an indictment for lack of an allegation of the secret character of the information purloined.

 The Court is of the opinion that inasmuch as the crime charged in Count One is *conspiracy*, the allegations of the indictment are sufficient against a motion to dismiss. The rule as to the sufficiency of the pleadings of the substantive offense which is the object of the conspiracy was clearly set out in Wong Tai v. United States, 1927, 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545, where the Supreme Court said:

"It is well settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—*it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy * * * or to state such object with the detail which would be required in an indictment for committing the substantive offense * * *.* In charging such a conspiracy 'certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is necessary.'" (Italics supplied.)

Immediately theretofore in describing the indictment there being considered, the Court had said:

"It charged the defendant, with definiteness and certainty and reasonable particularity as to time and place, with conspiring with a named person and others to commit certain specified offenses in violation of the Opium Act; and further charged him, in like manner with doing various specified acts to effect the object of the conspiracy."

Recently the Second Circuit Court of Appeals in United States v. Switzer, 2 Cir., 1958, 252 F.2d 139, similarly held in a case involving an indictment for conspiracy to transfer a bankrupt's property illegally, that the indictment need not describe the substantive crime with the particularity of an indictment for that offense.

In United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, at page 591, which involved an offense similar to the instant one, it was stated:

"The defendants now assert that the indictment, which followed the language of the statute, was fatally defective since it did not allege that the matter there described was not public. But the statutory language necessarily imported its correct judicial interpretation. Consequently the indictment was sufficient under Rule 7(c) of the Federal Rules of Criminal Procedure * * *."

■ The instant Count One of the indictment more than meets the requisites outlined in the Wong Tai case, supra. The time, place, participants, and overt acts delineated, define the alleged conspiracy with sufficient specificity.

The respective motions of defendants Hirsch and Melekh to dismiss Count One are denied.

*Motions of Melekh and Hirsch to Dismiss Counts Two and Three of the Indictment.* Both defendants Melekh and Hirsch move to dismiss Counts Two and Three of the indictment for failure to state an offense against the United States, and Hirsch additionally moves for its dismissal on the ground of improper venue. Melekh later joined in this aspect of the motion.

Counts Two and Three charge a violation by conspiracy between the defendants to induce, or to aid and abet, in the inducement of a United States citizen to act as an agent of the U.S.S.R. without prior notification to the Secretary of State, in violation of 18 U.S.C. § 951. By a tortured logic, defendants contend that the counts cannot stand if said Section 951 were not applicable to the person so to be induced. They reason that § 951 is not applicable to such person because § 951 is in conflict with the Foreign Agents Registration Act of 1938, 22 U.S.C.A. §§ 611–621, and therefore was superseded by it, except as to those persons not within the purview of the later act. They contend that if this construction were not adopted a person complying with the Foreign Agents Registration Act would ipso facto be violating § 951.

■ The Court finds no inconsistency between 18 U.S.C. § 951, making it a criminal offense punishable by not more than $5,000 and/or ten years, for one to act as an agent of a foreign government without prior notification to the Secretary of State, and 22 U.S.C.A. § 612(a) which requires every person who becomes an agent of a foreign principal to register with the Attorney General within ten days after becoming such agent, and prescribes a $10,000 and/or five-year penalty. The one could be for the purpose of clarification of diplomatic ramifications and the other for security measures. The registering officials are different; the times are different. Nor is the difference in prescribed time for registration necessarily incompatible. Furthermore, as is pointed out by the Government, Section 13 of the Foreign Agents Registration Act provided that

"This Act is in addition to and not in substitution for any other existing statute." 22 U.S.C.A. p. 234.

Finally, because of the later date of enactment of the Criminal Code, Section 951 of Title 18 was in fact enacted later than 22 U.S.C.A. § 612.

Contention is further made that the requirement of registration is in violation of the constitutional privilege against self-incrimination, in that § 612, Title 22, at least requires registration within ten days *after* becoming a foreign agent.

It is intimated in United States v. Kahriger, 1953, 345 U.S. 22, at page 32, 73 S.Ct. 510, at page 515, 97 L.Ed. 754, that one failing to take the action re-

quired has no standing to raise the contention of unconstitutionality of the statute assailed. The Court said:

> " 'If the form of return provided called for answers that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all.' [United States v. Sullivan] 274 U.S. [259] at page 263 [47 S.Ct. 607, 71 L.Ed. 1037]."

The Court goes on, additionally, to point out that in any event the statutory requirement of registration—in that case of persons engaged in the occupation of accepting wagers—was not unconstitutional, because the statute concerned *future* acts, and the constitutional protection covered only *past* deeds. It said (345 U.S. at page 32, 73 S.Ct. at page 515):

> "Assuming that respondent can raise the self-incrimination issue, that privilege has relation only to past acts, not to future acts that may or may not be committed. 8 Wigmore (3d ed., 1940) § 2259(c). * * * Under the registration provisions of the wagering tax, appellee is ·not compelled to confess to acts already committed, he is merely informed by the statute that in order to engage in the business of wagering in the future he must fulfill certain conditions."

■■ As the Court reads the statute, 22 U.S.C.A. § 612 requiring an agent of a foreign principal to register within ten days after becoming such agent, it means not later than ten days after becoming such agent—there is no prohibition against an earlier registration. One able to make a timely registration with noncriminal consequences but failing to make any registration at any time is hardly in a position to challenge the constitutionality of the statute. Furthermore, the occupations governed by the registration statute in this case, § 591, Title 18, could generally be deemed far more innocuous in character than that of

the occupation of accepting wagers, which was being considered and held valid in the Kahriger case, supra.

■ As the Government points out, Counts Two and Three do not charge a conspiracy to commit espionage or any crime other than violation of the registration requirement. We have therefore a situation where a statute requires registration although no future criminal activity is anticipated. Such a statute is not unconstitutional because incidentally it might be applicable to one about to be criminally engaged. The case of Communist Party of United States of America v. Subversive Activities Control Board, 1954, 96 U.S.App.D.C. 66, 223 F. 2d 531, is supportive of this conclusion.

■■ Defendant Melekh individually contends that Counts Two and Three should be dismissed as to him because as an employee of the United Nations (hereinafter termed U. N.) he is granted specific exemption under the statute, 22 U.S.C.A. § 288d(a), and that while the indictment in those counts does not charge Melekh personally with failure to register, they achieve the same end by charging him respectively with conspiring and aiding. As the Court understands the intent of this act it is to grant a personal exemption to such person as to his own liability for registration. There is no reason to suppose that carte blanche privileges were thereby to be accorded the immune person's activities in respect to third parties not so immune. Such activities could hardly be construed to fall within the "immunities of a governmental nature" which defendant contends follows from the Committee Report on the Act (1945 U.S.Code Cong. Service, p. 946). Furthermore, one can be guilty as an aider and abettor, though himself incapable of committing the principal crime (Haggerty v. United States, 7 Cir., 1925, 5 F.2d 224).

■ While conceding that a charge of conspiracy need not state the substantive criminal object of the conspiracy with detail, the defendants staunchly maintain that Count Two must fail because no

criminal object of the conspiracy is alleged. They contend it is not stated that the United States citizen who was the center of the conspiracy is not alleged to have *known* that he was acting as an agent for a foreign government, and therefore without such knowledge cannot be an agent.

The discussion upon the first motion concerning the phraseology of an indictment for conspiracy is equally applicable to this contention. A reading of Count Two would make it quite clear that the person who was the subject-matter of the conspiracy was fully cognizant of his role as an agent for a foreign government.

■ Defendants further contend that Counts Two and Three do not properly lie in the Northern District of Illinois inasmuch as the statutory duty of registration which defendants are alleged to have violated was fulfillable only by registration with the Secretary of State in Washington, D. C. Again, defendants have glossed over the precise charges of the indictment, i. e., conspiracy, and aiding and abetting another to violate the statutory duty of registering. The alleged criminal conspiring, and aiding and abetting, are stated in the said counts to have occurred in the Northern District of Illinois and are therefore cognizable in this district. As Judge Duffy long ago said in United States v. Buerk, D.C. 1941, 38 F.Supp. 409, at page 411,

"The proper venue to try a violator * * * would be in the district where he acted as agent without having given prior notification to the Secretary of State."

The case of Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340, is fully supportive of this court's venue in this cause. The cases are legion that jurisdiction or venue of the crime of conspiracy is proper in the district where the conspiracy was formed or an overt act performed. Annotation to 18 U.S.C. § 371, notes 275, 276.

The motions of Melekh and Hirsch to dismiss Counts Two and Three for failure to state an offense and improper venue are denied.

■ *Motions of Melekh and Hirsch for a Bill of Particulars.* Each of the defendants, Melekh and Hirsch, has filed a voluminous, detailed request for a bill of particulars. Their examination indicates that except in one respect, later discussed, the defendants have misconceived the function of a bill of particulars and are attempting to extract, not the details of the charge against them but the minutiae of evidence as well. A reading of the indictment, summarized above, shows that on the whole the defendants have been apprised in far greater detail than Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., demands. That Rule states the indictment "shall be a plain, concise and definite written statement of the *essential facts* constituting the offense charged."

It has been said that "The office of a bill of particulars is to inform the accused of the nature of the charge with sufficient precision to enable him to prepare for trial, to prevent surprise or to plead his acquittal or conviction in bar of another prosecution for the same offense." Cyclopedia of Federal Procedure, § 42.198. The same authority points out however that "it is not the function of the bill of particulars to force the government to reveal its evidence in advance of the trial." Ibid.

The language of the Supreme Court in the Wong Tai case, 273 U.S. 77, at page 82, 47 S.Ct. 300, at page 302, 71 L.Ed. 545, seems to the Court particularly applicable in the instant case. It was said:

"The defendant also made a motion, * * * for a detailed bill of particulars, setting forth with particularity the specific facts in reference to the several overt acts alleged in the indictment, with various specifications as to times, places, names of persons, quantities, prices, containers, buildings, agencies, instrumentalities, etc., and the manner in which and the specific circumstances under which they were committed.

594

This motion—which in effect sought a complete discovery of the Government's case in reference to the overt acts—was denied on the ground that the indictment was sufficiently definite in view of the unknown matters involved and the motion called 'for too much details of evidence.'

"The application for the bill of particulars was one addressed to the sound discretion of the court, and, there being no abuse of this discretion, its action thereon should not be disturbed * * *."

The motion of Hirsch seeks to know: the kind and nature of documents as to which he is alleged to have conspired; which forts, batteries, etc., the conspiracy was to get material about and whether such material was obtainable from a legally accessible source; which defendants are alleged to have conspired to induce the citizen to procure the material; what the inducement was, whether it was given, by whom, and where; the name of the citizen sought to be induced; the names of those activated to procure information; the information sought; the acts of defendants done to activate the individuals; the names of the individuals referred to in the overt acts; whether they are the same; which overt acts are claimed to have been known to defendant Hirsch; the aid which the defendants conspired to give the citizen to act as agent of the U.S.S.R.; what aid was actually given; what abetment was conspired to be given or was actually given, and to whom, where, and by whom; what counsel was conspired to have been given a citizen to act as agent of U.S.S.R., and what counsel was actually given, and where, when and by which defendant; what inducement was conspired to have been given a citizen to act as an agent of the U.S.S.R., and what if any was actually given, where, when and by which defendant; what procurement was conspired to be given a citizen to act as an agent of the U.S.S.R., or was actually given, where, when and by which defendant; what means were used to conceal the existence of the conspiracy;

what aid was given by Melekh to Hirsch to commit the crime, and when and where it was given; what abetment Melekh gave Hirsch, and when and where it was given; what counsel Melekh gave Hirsch, and when and where it was given; what command Melekh gave Hirsch to commit the crime, and when and where it was given; what inducement Melekh gave Hirsch, and when and where it was given, and similarly as to what procurement Melekh gave to Hirsch.

Defendant Melekh moves by his bill of particulars to ascertain inter alia whether the conspiracy consisted of any specific agreement, and the time, place and circumstances of the making of each such agreement, and the name and address of each party thereto or present at its making; what specified military installations are referred to both within and without Chicago; whether the information was restricted by virtue of a law, regulation or order, and if so which such ruling; what information relating to the national defense is referred to; what supervision it is claimed Melekh gave; who were the "certain" co-conspirators; what acts constituted the activating by defendants as stated by Paragraph 5, Count One; where, when, and in what circumstances and connections and for what purposes Melekh used the pseudonym; what were the specific assignments referred to in the indictment and the exact dates and places of overt acts; to whom did Hirsch identify himself as John Gilmore; the description of slip of paper on which Melekh is claimed to have written, and for what purpose; similarly, the purpose for which Melekh gave money as stated in certain overt acts, and the purpose for which co-conspirator Doronkin did the acts referred to; clarification of the term "the vicinity of"; the physical description and subject matter of the map and photographs; the manner in which the defendant aided, induced, etc., the act alleged; whether the citizen knew or was to know he was acting as an agent of the U.S.S.R.; what other valuable considerations were to be received by the alleged citizen; whether the said citizen was

knowingly to transmit the information to the U.S.S.R.; specification as to whom Melekh was to use fictitious names; what other means were to be used for concealment of the conspiracy; what agents of the U.S.S.R. requested Hirsch to commit the stated acts, and the time, place and means thereof; and what manner Melekh aided, abetted, etc., the offense by Hirsch.

Bearing in mind the overall detailed statement of the alleged offenses in the indictment and the function of a bill of particulars, the Court concludes that except in one respect, the indictment meets the requirements of advising the defendants of the charge they are to meet, the locales, the times, and the objects of the conspiracy. The Court is of the opinion that the further details which the defendants seek are as to matters purely evidentiary in character, and are an unwarranted attempt to ascertain the complete case of the Government in advance and further to limit the scope of the evidence the Government may adduce on the trial. Rubio v. United States, 9 Cir., 1927, 22 F.2d 766; United States v. Rosenberg, D.C.S.D.N.Y.1950, 10 F.R.D. 521; Wainer v. United States, 7 Cir., 1936, 82 F.2d 305; United States v. Greater Kansas City Retail Coal M. Ass'n, D.C.W.D.Mo.1949, 85 F.Supp. 503; United States v. Malinsky, D.C.S.D.N.Y. 1956, 19 F.R.D. 426; United States v. Ansani, 7 Cir., 1957, 240 F.2d 216; Land v. United States, 4 Cir., 1949, 177 F.2d 346; United States v. Chapman, 7 Cir., 1948, 168 F.2d 997.

In respect to the one exception, i. e., discovery of the name of the "citizen of the United States" and the "individuals" or "individual" referred to in the indictment as being the alleged tool to effect the object of the conspiracy, the Government stated on oral argument of the motion that all these allegations referred to but one and the same person, and indicated willingness to file a formal document to that effect. The Government further indicated that it had every intention of producing the person as a witness in this case; it was reluctant however to spread the person's name on the record

and felt "the interests of the Government should be protected to the extent that * * * [it] be permitted to retain as a secret at least between counsel and the parties, until such time as the case comes to issue and the witness is called to the stand, the name, street address and specific identity of that person." The Government's brief upon this motion also states that the identity would be fully disclosed to the defendants upon the trial; and that in any event if he is not called by the Government as a witness his identity will be furnished to the defendants in advance of trial.

In view of the Supreme Court's ruling in Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, the Court concludes that justice requires prior to trial the disclosure to the defendants of the identity of the United States citizen.

The respective motions of the defendants for a bill of particulars are denied except that the name of the United States citizen mentioned in the indictment is to be disclosed to the defendants two weeks prior to the date of trial. If the Government deems protective or restricted disclosure necessary, it may make appropriate application.

*Motion of Melekh to strike improper matter from the caption and body of the indictment.* Melekh moves to have stricken the phrases indicating an alias, appearing in the caption and body of the indictment. In those phrases he is referred to as "also known as Peter Stephen and also known as 'Gipsy' " and he complains of the reference to defendant Hirsch as "also known as John Gilmore." He contends that those phrases will be unduly prejudicial as indicating that the defendants used fictitious names and would put the defendants in an "opprobrious light," and if the Government fails to prove the use of those names nothing pertaining to the use of aliases should be before the jury.

The Court concludes that this motion is premature. If the use of aliases be proved by the Government, and that the

use of the aliases was an integral part of the conspiracy, the defendants have no just cause for complaint at being so described. Judge Major said long ago in United States v. Solowitz, 7 Cir., 1938, 99 F.2d 714, at page 715:

"It is also urged that appellant was prejudiced by charging him and his co-defendant under a number of aliases. True, this practice has been criticised by some courts, and we think, not without merit. *Of course, if a person has used names other than his right name, as the record discloses was the case so far as appellant is concerned, and the Government proves such aliases, there can be no legitimate complaint.* Otherwise, it is not difficult to see how a defendant might be prejudiced before a jury. We do not believe, however, the aliases attached to appellant's co-defendant, under the circumstances shown to exist, could have had any harmful effect as to appellant." (Italics added.)

The Cyclopedia of Federal Procedure, § 42.66, says:

"If the defendant has an alias, *it is proper and sometimes necessary to state it.*" (Italics added.)

The motion to strike the phrases stating aliases is denied.

■■■ *Re Request of Defendant Hirsch for Discovery as to Grand Jury Minutes.* The third aspect of the motion of defendant Hirsch for discovery (the other two aspects are being reserved for decision) pertains to discovery which he seeks of "All books, papers, writings, sketches, documents, maps, photographs, photographic negatives, notes, recordings on tape, wire or other mechanism, and all other objects obtained by the United States from others * * * which * * * were presented to the grand jury in connection with the return of the indictment herein." Defendant Hirsch, in his motion to dismiss the indictment, also, as an alternative seeks leave to examine the minutes of the Grand Jury to establish the Government's failure to introduce evidence of the "secrecy" of the "information" subject of the charge. It is the defendant's contention that the disclosure is to be made "Where there is reason to believe that the evidence presented to the Grand Jury was insufficient to charge the crime—and, therefore, the indictment is subject to dismissal on that ground," citing United States v. Weber, 2 Cir., 1952, 197 F.2d 237; United States v. Geller, D.C.S.D.N.Y.1957, 154 F.Supp. 727; United States v. Holmes, 3 Cir., 1948, 168 F.2d 888; United States v. Bridges, D.C.N.D.Cal.1949, 86 F.Supp. 922. The Government, however, cites Costello v. United States, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397, wherein the Supreme Court declined to establish a rule permitting defendants in criminal cases to challenge indictments on the ground that they are not supported by adequate or competent evidence.

The cases are legion which hold that the disclosure of grand jury minutes is discretionary with the trial court; that a strong and positive showing is required of persons seeking to break the seal of secrecy surrounding grand jury proceedings. United States v. Brennan, D.C. Minn.1955, 134 F.Supp. 42; United States v. Alper, 2 Cir., 1946, 156 F.2d 222; United States v. Schack, D.C.S.D. N.Y.1958, 165 F.Supp. 371; United States v. Procter & Gamble Co. et al., 1958, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed. 2d 1077; United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 60 S. Ct. 811, 84 L.Ed. 1129; United States v. Rose, 3 Cir., 1954, 215 F.2d 617; In Matter of April 1956 Term Grand Jury, 7 Cir., 1956, 239 F.2d 263; Goodman v. United States, 9 Cir., 1939, 108 F.2d 516, 127 A.L.R. 265; United States v. Skurla, D.C.W.D.Pa.1954, 126 F.Supp. 711; United States v. Central Supply Ass'n, D.C.N.D.Ohio 1940, 34 F.Supp. 241; United States v. Smyth, D.C.N.D.Cal. 1952, 104 F.Supp. 283.

The Court is of the opinion that in view of the traditional guard of secrecy granted grand jury proceedings and in view of the detail of the incidents of the conspiracy outlined in the indictment, de-

fendant has not made the strong showing that is required to overcome the policy against disclosure. The request for disclosure of the grand jury minutes or evidence adduced before it is denied.

 *Motion of Melekh to Dismiss on Basis Exclusive Jurisdiction of Cause is in Supreme Court.* Defendant Melekh has moved for the dismissal of this proceeding on the ground that exclusive jurisdiction of the cause is in the United States Supreme Court. The bases for this contention are Article III, Section 2, Clause 2 of the United States Constitution which provides that

"In all Cases affecting Ambassadors, other public Ministers and Consuls * * * the supreme Court shall have original Jurisdiction * * *"

and the statute, 28 U.S.C. § 1251, which provides similarly, that

"The Supreme Court shall have original and exclusive jurisdiction of: * * * (2) All actions or proceedings against ambassadors or other public ministers of foreign states or their domestics or domestic servants, not inconsistent with the law of nations * * *."

It is defendant Melekh's position that he is a "public minister" which fact would defeat this Court's jurisdiction.

The facts in respect to this defendant, as disclosed by the pleadings and exhibits, are that he is an employee of the United Nations Secretariat, employed as Chief of the Russian language section in the Office of Conference Services of the Secretariat of the United Nations, as a result of a request from the United Nations. He is a Soviet citizen with the diplomatic rank in Russia of Second Secretary of the Ministry of Foreign Affairs of the U.S.S.R., conferred upon him in accordance with the provisions of the Decree of the Presidium of the U.S.S.R. Supreme Soviet dated May 22, 1943. He entered the United States having a Soviet (not an American) Diplomatic passport on a non-immigrant G–4 visa bearing the notation "Employee of U. N. Secretariat." This G–4 visa is of an alien qualified to pass to and from the U. N. Headquarters under Section 11 of the Headquarters Agreement of the United Nations, 61 Stat. 758 (8 U.S.C.A. § 1101(a) (15) (C)).

The Chief of Protocol, Department of States, certifies that

"I am responsible for the maintenance in the Department of State and have custody of the official records of the Government of the United States regarding (1) the names and status of ambassadors and other public ministers accredited to the United States by foreign governments and received as such by the President in accordance with Article II, Section 3 of the Constitution; and (2) the names and status of all other persons who have been notified to and recognized or accepted by the United States in any capacity which entitles them to diplomatic immunity in the United States pursuant to the Constitution and the laws of the United States made in pursuance thereof and treaties and other international agreements in force between the United States and other governments. * * * I have caused diligent search to be made of such records and have found no record to exist that Mr. Igor Y. Melekh was ever accredited to the United States, or that the said Mr. Igor Y. Melekh was ever notified to and recognized or accepted by the United States in any capacity which would entitle him to diplomatic immunity."

The Department of State has stated to the Embassy of the U.S.S.R. by note dated November 10, 1960, that

"Mr. Melekh has not been accredited to and received by the United States as a diplomatic officer nor as a resident member of a permanent mission to the United Nations within the meaning of Section 15 of the United Nations Headquarters Agreement."

The Government's position that Melekh is not present in this country *as a representative* of the U.S.S.R. to this country is clearly borne out by this documentary evidence. The Court concludes that Melekh cannot qualify as a "public minister" as the term is used in the Constitution and in the statute.

The Court has no quarrel with defendant's contention for an elastic construction of the Constitution (as called for by United States v. Classic et al., 1941, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368) to permit its basic concepts to grow with the inevitable growth and complexities of an expanding civilization. It may be granted that the purpose of investing the United States Supreme Court with sole jurisdiction of proceedings involving foreign public ministers and their retinues was designed to maintain international peace and "high considerations of public policy" (Ex parte Gruber, 1925, 269 U.S. 302, 303, 46 S.Ct. 112, 70 L.Ed. 280; similarly, Ex parte Hitz, 1884, 111 U.S. 766, 4 S.Ct. 698, 28 L.Ed. 592). However, the Court does not conceive it to have been the intention of the drafters of the Constitution to burden the United States Supreme Court with the solution of legal proceedings not involving representatives of a foreign nation, stationed here, who had no truly diplomatic function.

■ Assuming the validity of defendant's argument that the phrase "public minister" covers not only the high ranking official, but the lowliest one as well, the Court is of the opinion that there inheres in the word "minister" the thought of representation, such as is clear from defendant's quotation from In re Baiz, 1890, 135 U.S. 403, at page 419, 10 S.Ct. 854, at page 858, 34 L.Ed. 222:

"These agents may be called ambassadors, envoys, ministers, commissioners, charges d'affaires, agents, or otherwise, but they possess in substance the same functions, rights, and privileges as agents of their respective governments for the transaction of its diplomatic business abroad."

Fully supportive of this view are the decisions in United States v. Coplon, D.C. S.D.N.Y.1949, 84 F.Supp. 472; D.C.S.D. N.Y.1950, 88 F.Supp. 915.

This Court adopts the learned opinion of Judge Herlands of the United States District Court for the Southern District of New York, 190 F.Supp. 67, 81, and his analysis of the many authorities in their application to this issue. He was correct in all of its aspects, and there is therefore no need to belabor again the contentions of defendant Melekh on this motion.

The motion to dismiss on the basis that exclusive jurisdiction of this proceeding is in the Supreme Court is denied.

■ *Motion of Defendant Melekh to Dismiss Indictment on the ground of immunity under U. N. Charter and International Law.* Defendant Melekh also moves to dismiss the indictment against him upon the ground that he is entitled to immunity under the provisions of the United Nations Charter and the principles of international law. Conceding that Judge Herlands' opinion extensively discusses the issue he centers his attack upon that opinion. He cites Article 105 of the Charter, Section 2, which provides that

"Representatives of the Members of the United Nations and officials of the organization shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connection with the Organization." 59 Stat. 1053.

Judge Herlands describes the immunity as a "functional" immunity, but defendant states that description is ambiguous in that a functional immunity may refer to immunity from arrests for acts done in the exercise of one's official functions or to arrests and prosecutions which would interfere with one's performance of his official functions. Defendant contends Judge Herlands' rejection of the

"natural" construction was in error, in taking the first construction. Defendant stresses the latter construction on the ground that an arrest would impede the exercise of any function, and consequently the United Nations Organization itself. Defendant further contends that on analogy to the construction ascribed by writers to the exemption under the League of Nations Covenant, he is entitled to "immunity from arrest and prosecution 'throughout the whole period' for which he held his United Nations post."

The Court is in complete accord with the ruling of Judge Herlands, as well as those of Judge Ryan and Judge Rifkin in the Coplon cases (D.C.S.D.N.Y.1950, 88 F.Supp. 915; D.C.S.D.N.Y.1949, 84 F.Supp. 472).

The motion to dismiss the indictment on the ground of immunity under the provisions of the United Nations Charter and the principles of international law is denied.

*Motion to Strike Overt Acts 8 and 10 from Count Two of the Indictment.* Defendants challenge the propriety of the inclusion of Overt Acts 8 and 10 in Count Two by reference from Count One. These two overt acts concern activity by Kirill S. Doronkin. Count Two names as co-conspirators solely Melekh and Hirsch, and other persons to the Grand Jury unknown. Defendants assert that since it is self-evident from the allegations of Count One that Doronkin was known to the Grand Jury, he may not be included under the catch-all phrase "other persons to the Grand Jury unknown," and his overt acts are improper in Count Two, he not being a co-conspirator named in said Count. The Government refutes this contention with the holding of Jones v. United States, 9 Cir., 1910, 179 F. 584, wherein it was held there was not a fatal variance between indictment and proof because the indictment charged that defendants conspired with each other and with others to the grand jurors unknown, while the evidence showed that the name of another conspirator was in fact known, where the indictment fully set out his connection with the conspiracy, designating him by name so as to clearly advise the defendants of the charge against them.

It has been consistently held that an indictment is not subject to an attack of variance where it is disclosed by the evidence that the jury in fact knew the name of a co-conspirator but failed to state it. It was so held by this Circuit in Fox v. United States, 7 Cir., 1930, 45 F.2d 364; Jones et al. v. United States, 4 Cir., 1926, 11 F.2d 98; Leverkuhn v. United States, 5 Cir., 1924, 297 F. 590; United States v. Heitler, D.C. N.D.Ill.1921, 274 F. 401.

The Court of Appeals for the Seventh Circuit in the very recent decision in United States of America v. Gasoline Retailers Association, Inc. et al., 7 Cir., 285 F.2d 688, at page 691, decided January 12, 1961, speaking through Judge Castle, said:

"*It is contended by appellants that the indictment was insufficient and should have been dismissed because it failed to list the names of some of the co-conspirators whose names were known to the government and the grand jury.*

"Rule 7(c) of the Federal Rules of Criminal Procedure provides that the indictment shall be 'a plain, concise and definite written statement of the essential facts constituting the offense charged' and 'need not contain * * * any other matter not necessary to such statement.' The indictment in this case did set forth 'essential facts' constituting the offense of conspiracy in restraint of trade, and there was no need to set out the particular names or identity of possible witnesses who at the trial might prove to have been co-conspirators. United States v. Glasser, 7 Cir., 1941, 116 F.2d 690. *We are of the opinion that it was not necessary for the indictment to specify the names of co-conspirators even though they were known to the grand jury.*" (Italics supplied.)

**600**

Additionally, it may not be amiss to point out that *the very overt acts, which defendants seek to strike,* and which were incorporated by reference, themselves state Kirill S. Doronkin to be a "co-conspirator herein." Of course, he is also so denominated in the first paragraph of Count One.

The Court therefore concludes there is no basis for the defendants' motion to strike overt acts 8 and 10 from Count Two of the indictment, and the motion is therefore denied.